23779

Carol Ann BERKEBILE, Appellant v. William C. OUTEN, Respondent.

(426 S.E. (2d) 760)

Supreme Court

*Thomas F. McDow*, Rock Hill, *for appellant.*

*J. Preston Strom, Jr.* and *F. Patrick Hubbard*, Columbia, *for respondent.*

Submitted Nov. 17, 1992.

Decided Jan. 11, 1993.

TOAL, Justice:

This case is an appeal from the circuit court's dismissal of a civil cause of action under SCRCP, Rule 12(b)(6). We reverse and remand.

## FACTS[1]

Respondent, Outen, operates Outen Amoco whose primary business is video poker machines. Video poker machines are operated by patrons who deposit money to play poker hands. Outen then pays cash to any player who wins free plays on the machines. On December 5, 1990, Appellant, Berkebile, lost $4,000 playing video poker at Outen's Amoco. She delivered eight checks for $500 each to Outen. At the time of delivery, Berkebile explained to Outen that there were insufficient funds in her account to pay the checks. Predictably, when Outen presented the checks for payment, Berkebile's bank dishonored the checks.

---

[1] The Respondent is the moving party of the 12(b)(6) motion; consequently, all of the operable facts must be taken in the light most favorable to the Appellant.

Outen initiated criminal proceedings in the magistrate's court for Lancaster County on two counts of "fraudulent checks." Appellant has alleged that Outen's motive in initiating the criminal prosecutions was to collect a civil debt, and that the criminal proceedings was merely an attempt to gain a collateral advantage over Berkebile. As a result of the prosecution, Berkebile paid Outen $1,000 on February 4, 1991. In addition, Berkebile alleges that she paid $40 to the magistrate's office, suffered lost time from her normal pursuits, mental injury, and damage to her reputation.

The original suit filed by Berkebile on March 4, 1991 contained five causes of action. In her first cause of action, Berkebile alleged that she was entitled to a recovery of money under S.C. Code Ann. § 32-1-10 (1991). The trial judge dismissed this portion of the action with prejudice under Rule 12(b)(6), SCRCP, on the grounds that the statute applied only to illegal gambling, and, therefore, could not be utilized against a legal gambling activity. It is from the dismissal of this first cause of action that Berkebile appeals.

## LAW/ANALYSIS

The sole issue on appeal is whether S.C. Code Ann. § 32-1-10 (1991) requires the playing of an illegal game as a prerequisite to the recovery of a gambling loss. At the center of the present controversy is S.C. Code Ann. § 32-1-10 (1991), which provides:

> [a]ny person who shall at any time or sitting, by playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid, lose to any person so playing or betting, in the whole, the sum or value of fifty dollars and shall pay or deliver such sum or value or any part thereof shall be at liberty, within three months then next ensuing, to sue for and recover the money or goods so lost and paid or delivered or any part thereof from the respective winner or winners thereof, with costs of suit, by action to be prosecuted in any court of competent jurisdiction.

*Id.* Except for the changing of monetary threshold, this statute has remained unchanged since 1712, when it was adopted from English law by the "reception statute" passed

by the South Carolina colonial assembly.

Outen asserts that the age of the statute and the social climate in which it was adopted should be critical factors in determining the intent of the legislature. Outen posits that since all gambling was illegal in the eighteenth and nineteenth centuries, this Court should infer that the statute was drafted to require illegal gambling as an element of recovery. This position, however, ignores two facts. The first is that during the eighteenth and nineteenth centuries, not all gambling was illegal. The second is that the statute does not specifically mention illegal gambling as a prerequisite to recovery.

In *Barret v. Hampton*, 4 S.C.L. (2 Brev.) 226 (1807), this Court held that a twenty dollar wager on a horse race was not illegal. We also stated that betting on horse racing was an activity included within the ambit of the predecessor statute to S.C. Code Ann. § 32-1-10. *Id.* It is clear from this decision that not all gambling was illegal during the period, and further, that § 32-1-10 had applicability to a legal activity. The holding in *Barret* was that recovery under the statute was denied because the debt incurred was below the minimum threshold amount. *Id.*

It is of interest that the General Assembly has not provided a statutory modification which requires illegal gambling as a basis for recovery under § 32-1-10. While this silence is not conclusive, it is evidence that the legislature has chosen not to change § 32-1-10. A basic presumption exists that the legislature has knowledge of previous legislation when later statutes are passed on a related subject. *Bell v. South Carolina State Highway Dept.*, 204 S.C. 462, 30 S.E. (2d) 65 (1944). This leads, at least, to an inference that the legislature does not require a showing of illegal gambling as an element for recovery under § 32-1-10.

An illegal contract has always been unenforceable,[2] so there is little need for the statute to remain in effect if it is limited solely to illegal gambling. We have repeatedly held that there

---

[2] South Carolina law is well established on this point. The general rule is that courts will not enforce a contract which is violative of public policy, statutory law, or provisions of the Constitution. *McConnel v. Kitchens*, 20 S.C. 430, 47 Am. Rep. 845 (1884); *see Batchelor v. American Health Ins. Co.*, 234 S.C. 103, 107 S.E. (2d) 36 (1959); *Hinnant v. Southern Ry. Co.*, 113 S.C. 19, 100 S.E. 709 (1919).

is a presumption that the legislature intended to accomplish something with a statute rather than to engage in a futile exercise. *See State ex rel. McLeod v. Montgomery,* 244 S.C. 308, 136 S.E. (2d) 778 (1964); *Gaffney v. Mallory,* 186 S.C. 337, 195 S.E. 840 (1938); *Fulghum v. Bleakley,* 177 S.C. 286, 181 S.E. 30 (1935). When the statute was originally adopted, the legality of a game may not have been an issue; however, during the statute's lengthy history, gambling in some form has not always been illegal. It therefore stands to reason that it was not necessarily a futile gesture by the legislature to maintain the status quo, especially when other statutes, related to gambling on nonpayout machines, were being amended.

Outen cites *Stevens v. Cincinnati Times-Star Co.,* 72 Ohio St. 112, 73 N.E. 1058 (1905), for the proposition that the statute would still have meaning, since there is no common law recovery for consideration paid on an illegal contract. Although an interesting argument, there is little support for the premise that this was the legislature's intention for adopting § 32-1-10. In fact, Berkebile posits the more compelling argument, that the statute has the effect of protecting a gambler, regardless of the legality of the game, from abusing the vice and exceeding limits which bring harm to the gambler and his or her family.[3]

To discover further support for Berkebile's proposition, one need look no further than the Statutes at Large which adopted the English Statutes of Anne in 1712. The applicable act which has evolved into § 32-1-10 was originally titled, "An Act for the better Preventing of **excessive** and deceitful Gaming." Statutes at Large, Appendix to the English Statutes Made of Force (1712) (with Anno Nono Anne c. VII (Chap. 1, 7 of Statutes of Queen Anne, Ninth Year) (1711)) [emphasis added]. The original act, which varies very little in substance from § 32-1-10, specifically provided that the use of "notes, bills, . . . or mortgages . . . where the whole or any part of the consideration . . . shall be for any money . . . won by gaming . . . shall be utterly void. . . ." *Id.* This provision

---

[3] There is a long-standing policy in South Carolina to protect a family from the vices and excesses of a spouse. The old dower and later elective share provisions of the South Carolina Probate Code are prime example of State policies protecting a family unit from becoming society's wards.

precludes the use of anything other than cash as a payment for a gaming debt.

The same act also provided for a legal remedy where the gambling debt was excessive.

> [A]ny person or persons whatsoever, who shall at any time or sitting, by playing at cards, . . . or other game or games, . . . lose to any one or more person[s] shall be at liberty within three months then next to sue for and recover the money or goods so lost. . . .

*Id.* This portion of the act, when read with the earlier provision, indicates that the General Assembly contemplated a policy which prevents a gambler from allowing his vice to overcome his ability to pay. The legislature adopted a policy to protect a citizen and his family from the gambler's uncontrollable impulses. This appears to be similar to the policies which underlie the adoption of limits to the amount of alcohol someone may drink in public, and the speed one may use on the highway. *See* S.C. Code Ann. § 16-17-530 (1985); S.C. Code Ann. § 56-5-1510 (1991).

Quite apart from considerations of the legislative policy which influenced the adoption of this statute, we have consistently held that where a statute is clear and unambiguous, it must be applied according to its its literal meaning. *Citizens for Lee County, Inc. v. Lee County,* — S.C. —, 416 S.E. (2d) 641 (1992); *Duke Power Co. v. South Carolina Tax Commission,* 292 S.C. 64, 354 S.E. (2d) 902 (1987). In reading § 32-1-10, it is clear that no requirement for an illegal game exists as an element for recovery of a fifty dollar or greater gambling debt. We can not construe a statute without regard to its plain and ordinary meaning, and we will not resort to subtle or forced construction in an attempt to limit or expand the scope of a statute. *First Baptist Church of Mauldin v. City of Mauldin,* — S.C. —, 417 S.E. (2d) 592 (1992).

In *State v. Blackmon,* 304 S.C. 270, 403 S.E. (2d) 660 (1991), this Court held that the statute did not specifically exclude a nonmechanical payout for a video poker game. In construing a criminal statute against the State, we refused to judicially legislate extra wording into the statute. *Id.* Although not a criminal statute, it would be equally improvident to judicially en-

graft extra requirements to legislation which is clear on its face.

Although we recognize that times change, and that the reasons for legislation may also change, any revisions to the clear meaning of a statute must come from the General Assembly. Accordingly, for the reasons stated, the circuit court is REVERSED and the case is REMANDED for a trial on the merits consistent with this opinion.

Reversed and remanded.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.