24373

Bill ARDIS, Appellant v. T. Scott WARD d/b/a Ward's One Stop, and American Amusement of Aiken, Inc., and Greenwood County, South Carolina, Respondents.

(467 S.E. (2d) 742)

Supreme Court

*Thomas F. McDow*, Rock Hill, *for Appellant.*

*Timothy G. Quinn*, Columbia, *for Respondents.*

Heard Nov. 15, 1995.

Decided Feb. 5, 1996; Reh. Den. Mar. 12, 1996.

TOAL, Justice:

Bill Ardis appeals the circuit court's dismissal of his complaint pursuant to Rules 12(b)(1) and 12(b)(6), SCRCP. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

Bill Ardis ("Ardis") brought this action against T. Scott Ward and American Amusement (collectively "Business" hereinafter) under S.C. Code Ann. § 32-1-20 (1991), which allows a person to sue for the recovery of the gambling losses of another. He alleged that Delores Ardis ("Delores") had during the period from April 1990 to January 1993 sustained losses of $29,239.60 while playing video poker on Business's machines. These losses were incurred on 93 different occasions, with each loss exceeding $50.00. Delores could not bring an action herself because the three-month statute of limitations period under S.C. Code Ann. § 32-1-10 (1991) had expired; instead, Ardis brought this action pursuant to section 32-1-20 (1991) to recover Delores's losses. In his complaint, Ardis prayed for actual damages plus treble damages and declared that Greenwood County would be entitled to one-half of any recovery.

Business filled a motion to dismiss and a motion for partial summary judgment, which the circuit court granted. Ardis appeals the circuit court's order, raising three issues:

1. When does the statute of limitations commence for a plaintiff attempting to recover, under S.C. Code Ann. § 32-1-20, the gambling losses of another?

2. Are video poker machines lotteries prohibited by Article XVII, § 7 of the South Carolina Constitution?

3. If video poker machines are constitutionally prohibited lotteries, is a third party barred from bringing an action under S.C. Code Ann. § 32-1-20 to recover the gambling losses of another?

## LAW/ANALYSIS

### A. Statute of Limitations

Ardis argues that the circuit court erred in limiting actions brought under section 32-1-20 to the same statute of limitations applicable to section 32-1-10. We agree.

S.C. Code Ann. § 32-1-10 allows an action by one who has lost money in playing cards or other games or in betting:

> Any person who shall at any time or sitting, by playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid, lose to any person or persons so playing or betting, in the whole, the sum or value of fifty dollars and shall pay or deliver such sum or value or any part thereof shall be at liberty, *within three months then next ensuing,* to sue for and recover the money or goods so lost and paid or delivered or any part thereof from the respective winner or winners thereof, with costs of suit, by action to by prosecuted in any court of competent jurisdiction.

(Emphasis added.) The next statutory section provides that third parties may bring an action for gambling losses, if the loser fails to sue for recovery:

> In case any person who shall lose such money or other thing as aforesaid shall not, *within the time aforesaid,* really and bona fide and without covin or collusion sue and with effect prosecute for the money or other things so by him or them lost and paid and delivered as aforesaid, it shall be lawful for any other person, by any such action or suit as aforesaid, to sue for and recover the same and treble the value thereof, with costs of suit, against such winner or winners as aforesaid, the one moiety thereof to the

use of the person that will sue for the same and the other moiety to the use of the county in which the offense shall have been committed.

S.C. Code Ann. § 32-1-20 (emphasis added). Section 32-1-10 establishes a three-month window wherein the gambler may recover his losses. Section 32-1-20 states that if the money loser "shall not, within the time aforesaid" sue, then "any other person" may "sue for and recover the same and treble the value thereof, with costs of suit, against such winner or winners." The clear implication of these words is that it is only after the three-month period that a third party may bring an action to recover the gambler's losses. "Where the terms of the statute are clear, the court must apply those terms according to their literal meaning." *Paschal v. State of S.C. Election Comm'n,* 317 S.C. 434, 436, 454 S.E. (2d) 890, 892 (1995). To hold, as the circuit court did, that the third party is limited to the same three-month statute of limitations as applies to section 32-1-10 would render the words "within the time aforesaid" meaningless. Further, it would apply the prior section's statute of limitations when there is no language in section 32-1-20 that suggests this should occur.

Other jurisdictions interpreting similar gambling loss provisions have reached the same conclusion that we have. *See* E. Le Fevre, Annotation, *Action to Recover Money or Property Lost and Pain through Gambling as Affected by Statute of Limitations,* 22 A.L.R. (2d) 1390, 1400, 1408 (1952) ("the limitation period applicable to an action by the loser does not apply to actions by third persons"; "action under the provision giving a third person a right of action to recover gambling losses if the loser does not sue within a specified period has been held to be governed by the general statute of limitations applicable to actions to recover a statutory penalty"); *Donovan v. Eastern Racing Ass'n,* 324 Mass. 393, 86 N.E. (2d) 903 (1949) (where gambling loss statute limited loser to three months to recover his losses, action by third parties was penal in nature and was governed by a one-year statute of limitations); *Tatham v. Freeman,* 51 Ga. App. 477, 180 S.E. 871, 872 (1935) ("Money paid in pursuance of a bet may be recovered back within six months after being paid, and, if not sought to be recovered back by the loser within that time, any person may bring an action against the person to whom such money is

paid in settlement of the bet. . . ."); *Ervin v. State*, 150 Ind. 332, 48 N.E. 249 (1897) (state's right of action under the gambling statute never accrues until the loser's right thereto expires).

Not limiting third parties to the three-month statute of limitations of section 32-1-10 would also comport with the policy enunciated by this court when it previously reviewed this section: "This portion of the Act, when read with the earlier provision, indicates that the General Assembly contemplated a policy which prevents a gambler from allowing his vice to overcome his ability to pay. The legislature adopted a policy to protect a citizen and his family from the gambler's uncontrollable impulses." *Berkebile v. Outen*, 311 S.C. 50, 55, 426 S.E. (2d) 760, 763 (1993).

Hence, both the clear wording of the statute and public policy dictate reversal of the circuit court's order.

■ We hold that S.C. Code Ann. § 15-3-570 (1976) is the statute of limitations applicable to actions under section 32-1-20. Section 15-3-570 states:

*An action upon a statute for a penalty or forfeiture given, in whole or in part, to any person who will prosecute for it must be commenced within one year after the commission of the offense.* If the action be not commenced within the year by a private party it may be commenced within two years thereafter in behalf of the State by the Attorney General or the solicitor of the circuit where the offense was committed, unless a different limitation be prescribed in the statute under which the action is brought.

(Emphasis added.) Because section 32-1-20 is in the nature of a penalty, section 15-3-570 provides the appropriate statute of limitations. Thus, Ardis could commence an action "within one year after the commission of the offense." *See* S.C. Code Ann. § 15-3-570.

### B. Constitutionality of Video Poker Machines

■ The second issue which Ardis raises on appeal is whether the circuit court erred in ruling that video poker machines are a "lottery" and thus prohibited by the South Carolina Constitution.[1] We need not address the

---

[1] "No lottery shall ever be allowed or be allowed or be advertised by newspapers, or otherwise, or its tickets be sold in this State." S.C. Const. art. XVII, § 7.

merits of this question unless we first find that Ardis is seeking to enforce a lottery agreement.

In its motion to dismiss, Business argued that Ardis's cause of action was violative of the South Carolina Constitution. The circuit court agreed with the argument and concluded that "[t]he alleged agreement between the parties in the present case is not enforceable because it is a lottery which is prohibited by the State Constitution." Ardis, however, was not alleging that there was an agreement which Business had violated. Rather, he had brought the action under section 32-1-20, a statutory penalty provision for the recovery of gambling losses, not a provision which grants a remedy for breach of agreements or contracts.[2] Thus, because the present action was not brought pursuant to an agreement or contract, the circuit court erred in addressing the constitutionality of agreements involving video poker machines.

Because of our resolution of the lottery issue, we need not reach the third issue raised by Ardis.

## CONCLUSION

For the foregoing reasons, this matter is REVERSED and REMANDED.

FINNEY, C.J., MOORE, A.J. and GEORGE T. GREGORY, JR. and WILLIAM P. KEESLEY, Acting Associate Justices, concur.

---

[2] The article heading "Gambling Contracts," which precedes sections 32-1-10 and 32-1-20, may have caused the circuit court to conclude that Ardis's action was one under an agreement. The statutory provisions themselves, however, do not require the existence of a contract or agreement in order for a gambler of third party to recover gambling losses. "For interpretative purposes, the title of a statute and heading of a section are of use only when they shed light on some ambiguous word or phrase and as tools available for resolution of doubt, but they cannot undo or limit what the text makes plain." *Garner v. Houck,* — S.C. —, —, 435 S.E. (2d) 847, 849 (1993).