485 S.E.2d 103

**Gladys H. MULLINAX, Appellant,**

v.

**J.M. BROWN AMUSEMENT CO., INC., Petroleum Distributors, Inc., and J.R. Stroupe, Respondents.**

No. 2649.

Court of Appeals of South Carolina.

Submitted Dec. 3, 1996.

Decided March 31, 1997.

Rehearing Denied May 22, 1997.

454

J. Gregory Studemeyer, Columbia; and Thomas F. McDow, of Rock Hill, for appellant.

William E. Winter, Jr., and William G. Rhoden, of Winter & Rhoden, Gaffney, for respondent, Petroleum Distributors, Inc.

Richard H. Rhodes, of Spartanburg; Jonathan Z. McKown and Wade S. Weatherford, III, both of Gaffney, all for respondent, J.M. Brown Amusement Co., Inc.

J.R. Stroupe, Gaffney, pro se.

HUFF, Judge:

Gladys Mullinax filed this action for the recovery of her husband's gambling losses under S.C.Code Ann. § 32–1–20 (1991) in 1993. The trial judge directed a verdict for Respondents on the grounds that Appellant's suit was collusive and barred by § 32–1–20. After a review of the legislative policy behind the statute and an examination of other jurisdictions' interpretations of the statute, we reverse and remand.[1]

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTS

Mrs. Mullinax filed this action against Respondents to recover losses her "helplessly addicted" husband sustained from 1991 to 1993 while playing video poker on Respondents' machines. Mrs. Mullinax was unaware of her husband's gambling problem until 1991, when she saw a bank statement reflecting a $3,600 depletion in their savings account. Mr. Mullinax admitted his gambling addiction to his wife in 1993, after reading a newspaper article explaining "that you had a chance of suing if you had lost a lot of money and getting part of it back or something." He testified he "didn't fully understand all it said . . . but it was a chance of getting your money back by suing . . . [M]y wife could get it back." Mrs. Mullinax also testified her husband had simply run out of money to gamble with.

Mr. Mullinax then called an attorney who told him he could sue for his losses from the preceding three months, or someone else could sue for three times the amount of his losses from the preceding three years. The Mullinaxes visited the attorney's office together, and Mr. Mullinax paid him $1,000. Mr. Mullinax continued to play the poker machines after his contact with the attorney. Mr. Mullinax eventually released this attorney because he "wouldn't move. He didn't want the case." Mr. Mullinax subsequently hired a second attorney for his wife.[2]

At trial, Mr. Mullinax emphasized he was merely assisting his wife in bringing the lawsuit. He told her he would "help her in any way, in any form, to try and get some of that money back for her. . . ." Mr. Mullinax insisted his wife did not have any money to pay for a lawyer. At the request of the second attorney, Mr. Mullinax compiled a record of his gambling losses. This process took three months. Mrs. Mullinax explained that her husband "got in the drawers. I wasn't there. I didn't help him, because I didn't know what it was all about." It was her understanding she "had to file the suit, but he had all the checks and everything, and ATM things he put together himself."

A portion of the cross-examination of Mrs. Mullinax reads:

---

2. Both attorneys represent Mrs. Mullinax in this appeal.

Q: Now, you and your husband are in cahoots in this lawsuit, aren't you?

A: As far as he is helping me. Is that what you mean?

Q: Y'all working together?

A: Well, he got all the stuff up, yes. But I'm the one that's bringing the lawsuit.

Mrs. Mullinax stated she was bringing the suit because she was the "one that needed the money." Mrs. Mullinax's income is $481 per month, and Mr. Mullinax makes $1100 in disability payments per month.

The trial judge granted the defendants' motion for directed verdict "based on this suit being brought in a collusive fashion." He ruled that "[A]ll inferences that can be drawn from the evidence ... leave me only one conclusion. I'm taking this in the light most favorable to you, the nonmoving party, that this is collusion as a matter of law ... the suit is her's [sic] in name only."

## LAW/ANALYSIS

▪▪▪ On appeal from an order granting a directed verdict, the appellate court views the evidence and all reasonable inferences from the evidence in the light most favorable to the party against whom the directed verdict was granted. *Whelan v. Welch,* 304 S.C. 548, 405 S.E.2d 836 (Ct.App.1991); *Unlimited Services, Inc. v. Macklen Enter., Inc.,* 303 S.C. 384, 401 S.E.2d 153 (1991). The trial court must eliminate from its consideration all evidence contrary to or in conflict with the evidence favorable to the nonmoving party and give to the nonmoving party every favorable inference that the facts reasonably suggest. *Collins & Sons Fine Jewelry, Inc. v. Carolina Safety Sys., Inc.,* 296 S.C. 219, 371 S.E.2d 539 (Ct.App.1988). Appellant claims there was no evidence of covin or collusion between Mr. & Mrs. Mullinax and asserts that if there was collusion, it was a question of fact for the jury. Appellant also asserts that the statute does not prohibit collusion between the gambler and the third party plaintiff.

Appellant brought this action under S.C.Code Ann. § 32-1-20 (1991). The statute allows a third party to sue for recovery of the gambling losses of another when the loser fails to sue

for those losses. It should be read in conjunction with S.C.Code Ann. § 32–1–10 (1991).[3] Section 32–1–20 reads:
In case any person who shall lose such money or other thing as aforesaid shall not, within the time aforesaid, really and bona fide and *without covin or collusion sue* and with effect prosecute for the money or other things so by him or them lost and paid and delivered as aforesaid, it shall be lawful for *any other person*, by and such action or suit *as aforesaid*, to sue for and recover the same and treble the value thereof . . . (emphasis added).

Our Supreme Court discussed § 32–1–20 in *Ardis v. Ward,* 321 S.C. 65, 467 S.E.2d 742 (1996).[4] In *Ardis,* a husband sued to recover the gambling losses of his wife. The *Ardis* court held that an action under § 32–1–20 was not limited to the same statute of limitations found in the companion statute, § 32–1–10. The court did not address the implication of the terms "covin or collusion." The court did, however, discuss the policy behind the gambling loss recovery statute, stating "[T]his portion of the act, when read with the earlier provision, indicates that the General Assembly contemplated a policy which prevents a gambler from allowing his vice to overcome his ability to pay. The legislature adopted a policy to protect a citizen and his family from the gambler's uncontrollable impulses." *Ardis* at 69, 467 S.E.2d at 744, quoting *Berkebile v. Outen,* 311 S.C. 50, 55, 426 S.E.2d 760, 763 (1993).

The *Berkebile* court also noted that this policy is "similar to the policies which underlie the adoption of limits to the amount of alcohol someone may drink in public, and the speed one may use on the highway." *Berkebile* at 55, 426 S.E.2d at

---

**3.** S.C.Code Ann. § 32–1–10 allows an action by one who has lost money in playing cards or other games or in betting:

Any person who shall at any time or sitting, by playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid, lose to any person or persons so playing or betting, in the whole, the sum or value of fifty dollars and shall pay or deliver such sum or value or any part thereof shall be at liberty, within three months then next ensuing, to sue for and recover the money or goods so lost and paid or delivered or any part thereof from the respective winner or winners thereof, with cost of suit, by action to be prosecuted in any court of competent jurisdiction.

**4.** We note that the trial judge below did not have the benefit of *Ardis.*

763. "There is a long-standing policy in South Carolina to protect a family from the vices and excesses of a spouse. The old dower and later elective share provisions of the South Carolina Probate Code are prime examples of State policies protecting a family unit from becoming society's wards." *Berkebile* at 56 n. 3, 426 S.E.2d at 763 n. 3.

We are mindful that the primary or fundamental rule of statutory construction a court must follow is to ascertain and give effect to the legislature's intention or purpose as expressed in the statute. *Green v. Thornton*, 265 S.C. 436, 219 S.E.2d 827 (1975). Unless there is something in a statute requiring a different interpretation, the words used in the statute must be given their ordinary meaning. *Hughes v. Edwards*, 265 S.C. 529, 220 S.E.2d 231 (1975). Covin is "a secret conspiracy or agreement between two or more persons to injure or defraud another." Collusion is "an agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law. It implies the existence of fraud of some kind, the employment of fraudulent means, or a lawful means for the accomplishment of an unlawful purpose." *Black's Law Dictionary* 366, 264 (6th ed. 1990).

While there are no South Carolina Supreme Court cases that have addressed the implication of "covin or collusion" in § 32–1–20, an examination of other jurisdictions proves helpful. In *Kizer v. Walden*, 198 Ill. 274, 65 N.E. 116 (1902), the Illinois Supreme Court considered a case under a gambling loss recovery statute that is substantially similar to § 32–1–20. The action was brought by the brother of one who lost money gambling, and the court considered the application of "covin or collusion" in the statute. The court found that the jury should have been allowed to decide whether any collusion between the brothers was so extreme as to bar suit under the statute. The court noted that "[w]here the right of recovery depends upon the existence of certain extrinsic facts about which the evidence is conflicting, the court has no right to take the case from the jury." *Kizer*, 65 N.E. at 119. The court stated the statute:

refer[s] to covin or collusion between the person who loses and the person who wins, and *not between the loser and the*

*third person suing for treble the amount lost.* Cases might arise where, by collusion between the loser and the winner, the former might bring a collusive suit against the latter, not with a view of recovering the amount of the loss, but for the purpose of preventing a suit for treble the amount of the loss by any third person. It is for this reason that the statute prohibits collusion between the loser and the winner. *Kizer* at 281, 65 N.E. 116, quoting *Cole v. Applebury,* 136 Mass. 525 (1884) (emphasis added).

The *Cole* court traced the origins of the Massachusetts gambling loss recovery statute to the English Statutes of Anne. Likewise, the *Berkebile* court noted that § 32–1–20 evolved from "An Act for the better Preventing of excessive and deceitful Gaming," found in the Statutes at Large which adopted the Statutes of Anne in 1712. *Berkebile* at 54, 426 S.E.2d at 763. The *Kizer* and *Cole* cases maintain that the "statute does not provide that the right of action in the plaintiff shall be defeated by any agreement between the plaintiff and the loser, by which the latter is to receive some benefit from the suit, made after the cause of action had vested in the plaintiff." *Kizer,* 65 N.E. at 118, *quoting Cole* and *Morris v. Farrington,* 133 Mass. 466 (1882). The *Kizer* court qualified this rule by stating that the agreement must not go to the extent of "making it the loser's suit." *Kizer,* 65 N.E. at 118. The *Kizer* court searched for evidence that the loser refrained from recovering his losses within the statutory period, and then maintained an action "in the name of his brother, or some other person, for the purpose of recovering against the winner treble the amount of his losses." *Kizer* at 118.

The legislative policy enunciated in *Ardis* and *Berkebile,* when coupled with the above case law, constrains us to reverse the findings of the trial judge. Although we agree with the *Cole* and *Kizer* courts that some suits are so obviously tainted by covin and collusion that they cannot be countenanced by the court, that is not the case here. The situation Mrs. Mullinax faces is a prime example of what the statute aims to correct. She is trying to undo the damage wreaked by the uncontrollable impulses of her husband. South Carolina has clearly adopted a policy to protect a family from the vices and recklessness of a spouse. Also, it was natural for Mr. Mulli-

nax to assist his wife in preparation for the suit because he had the necessary information and documentation.

Furthermore, the evidence does not conclusively show that Mr. Mullinax intentionally refrained from bringing the action in his own name so that Mrs. Mullinax could sue for three times the amount. Mr. Mullinax denied ever telling the first lawyer to delay in filing suit, and he stated that he called the lawyer "several times and he was sitting there. He never made a move and never [did] anything, until finally I called him and cussed him out and told him to send my stuff back to me.... He drug his feet from March until about October." After viewing the evidence and all reasonable inferences from the evidence in the light most favorable to Appellant, the order of the trial judge is

**REVERSED AND REMANDED.**

HOWELL, C.J., and HOWARD, J., concur.