496 S.E.2d 871

**Jay JUSTICE, Appellant,**

v.

**The PANTRY, Hot Spot, R.L. Jordan, Short Stop, Thomas Reagan, Li'l Cricket Food Stores, Gorgon Zuber, The Dugout, Mid–South, Inc., Fuel City Number 61, Briar Patch, Jerry Matheson, Aladdins, Mary Heatherly Thirty Something, Gene Lamb and Mary Alice Lamb, and Highway Number 9 Auto Stop, and Steve West, Respondents.**

No. 2787.

Court of Appeals of South Carolina.

Heard Dec. 3, 1997.

Decided Jan. 26, 1998.

Rehearing Denied Mar. 19, 1998.

38

Christopher G. Isgett, of Lee, Eadon, Isgett & Popwell, Columbia, for appellant.

Dwight F. Drake and Zoe Sanders Nettles, both of Nelson, Mullins, Riley & Scarborough, Columbia; H. Buck Cutts, Surfside Beach; John J. McCauley, of Breibart, McCauley & Newton, Lexington; and William E. Winter, Jr., of Winter & Rhoden, Gaffney, for respondents.

HOWARD, Judge:

Jay Justice filed two lawsuits against The Pantry and others (Defendants), under S.C.Code Ann. § 32–1–20 (1991), to recover gambling debts incurred by his mother and sister while playing video poker machines.[1] The trial court dismissed both

---

1. The two complaints filed by Justice are identical except one complaint seeks recovery of losses incurred by his mother and the other seeks

suits on Defendants' motion, ruling: 1.) Justice failed to state facts sufficient to constitute a cause of action pursuant to Rule 12(b)(6), SCRCP; and 2.) section 32–1–20 was impliedly repealed by enactment of the Video Game Machines Act, S.C.Code Ann. §§ 12–21–2770 to 2809 (Supp.1997). Justice appeals. We reverse and remand.

## I. ISSUES

A. Did the trial court err in dismissing Justice's suits for failure to state facts sufficient to constitute a cause of action pursuant to Rule 12(b)(6), SCRCP?

B. Did the trial court err in ruling section 32–1–20 was impliedly repealed by enactment of the Video Game Machines Act?

## II. DISCUSSION

The complaints filed by Justice read, in pertinent part: "That on several dates throughout the calendar years of 1995–1996, [Justice's mother/sister], while gambling on the poker video machines owned and/or operated by the Defendants, lost in excess of Fifty Dollars ($50.00) per sitting."

Justice sought recovery of the gambling losses under section 32–1–20, which allows anyone to sue to recover the gambling losses of a third party if the third party does not seek recovery of the losses under S.C.Code Ann. § 32–1–10 (1991) within three months of the loss.[2] To understand the meaning of section 32–1–20, it must be read in conjunction with section 32–1–10.

Section 32–1–10 reads:

Any person who shall at any time or sitting, by playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid, lose to any person or persons so playing or betting, in the whole, the sum or value of fifty

recovery of losses incurred by his sister. For purposes of this appeal, these complaints will be considered together.

**2.** Both statutes were originally adopted in 1712 and the statutory language has changed very little since then. *See Berkebile v. Outen,* 311 S.C. 50, 426 S.E.2d 760 (1993).

dollars and shall pay or deliver such sum or value or any part thereof shall be at liberty, within three months then next ensuing, to sue for and recover the money or goods so lost and paid or delivered or any part thereof from the respective winner or winners thereof, with costs of suit, by action to be prosecuted in any court of competent jurisdiction.

Section 32–1–20 reads:

In case any person who shall lose such money or other thing as aforesaid shall not, within the time aforesaid, really and bona fide and without covin or collusion sue and with effect prosecute for the money or other things so by him or them lost and paid and delivered as aforesaid, it shall be lawful for any other person, by any such action or suit as aforesaid, to sue for and recover the same and treble the value thereof, with costs of suit, against such winner or winners as aforesaid, the one moiety thereof to the use of the person that will sue for the same and the other moiety to the use of the county in which the offense shall have been committed.

## A. Rule 12(b)(6) Dismissal

■ Justice contends the trial court erred by dismissing his suits pursuant to Rule 12(b)(6), SCRCP, for failure to state facts sufficient to constitute a cause of action. We agree.

The trial court relied upon *Trumbo v. Finley*, 18 S.C. 305 (1882), which imposed strict standards of pleading a cause of action under section 32–1–20 because it is a penal statute. Although "section 32–1–20 is in the nature of a penalty," *Ardis v. Ward*, 321 S.C. 65, 69, 467 S.E.2d 742, 744 (1996), the trial court's reliance on *Trumbo* is misplaced because the pleading rules established in *Trumbo* for penal statutes in civil actions have been replaced by the South Carolina Rules of Civil Procedure (the Rules), which became effective July 1, 1985. Rule 86, SCRCP.

The Rules "govern the procedure in all South Carolina courts in all suits of a civil nature whether cognizable as cases at law or in equity." Rule 1, SCRCP. The Rules clearly set forth the required contents of pleadings. Pleadings "shall contain (1) a short and plain statement of the grounds including facts and statutes upon which the court's jurisdiction

depends, unless the court already has jurisdiction to support it, (2) a short and plain statement of the facts showing that the pleader is entitled to relief, and (3) a prayer or demand for judgment for the relief to which he deems himself entitled." Rule 8(a), SCRCP. "All pleadings shall be so construed as to do substantial justice to all parties." Rule 8(f), SCRCP. Therefore, in deciding whether a dismissal under Rule 12(b)(6), SCRCP, is proper, the adequacy of a plaintiff's complaint must be determined through application of the pleading rules of Rule 8, SCRCP.

As grounds for dismissal, the trial court found three deficiencies in Justice's complaints: 1.) he failed to allege that the losses occurred " 'at any time or sitting' "; 2.) he failed to allege how the losses occurred, whether " 'by playing at cards, dice table or any other game' or by 'betting on the sides or hands' "; and 3.) he failed to allege to whom the losses occurred. The trial court reasoned that Justice had not pled facts to establish each element of a cause of action under section 32–1–20. This was error.

Justice's complaints contain sufficient allegations regarding these three elements and comply with Rule 8, SCRCP. First, Justice clearly alleged in his complaints that his mother and sister, while gambling, "lost in excess of Fifty Dollars ($50.00) *per sitting*" (emphasis added). Secondly, Justice specifically alleged that the money was lost "while gambling on the poker video machines." Finally, Justice alleged the money was lost to the Defendants named in the complaints, who "owned and/or operated" the video poker machines.

A dismissal pursuant to Rule 12(b)(6) "cannot be sustained if facts alleged in the complaint and inferences reasonably deducible therefrom would entitle plaintiff to any relief on any theory of the case." *Brown v. Leverette,* 291 S.C. 364, 366, 353 S.E.2d 697, 698 (1987). "The trial court and this [C]ourt on appeal must presume all well pled facts to be true." *Morrow Crane Co. v. T.R. Tucker Constr. Co.,* 296 S.C. 427, 429, 373 S.E.2d 701, 702 (Ct.App.1988). "[P]leadings in a case should be construed liberally so that substantial justice is done between the parties. Further, a judgment on the pleadings is considered to be a drastic procedure by our courts." *Russell*

*v. City of Columbia,* 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991) (citation omitted).

Assuming the facts alleged in the complaints and all reasonable inferences therefrom to be true, Justice is entitled to a verdict in his favor. Therefore, dismissal under Rule 12(b)(6), SCRCP, was improper.

## B. Implied Repeal of Section 32–1–20

■ Justice contends the trial court erred in ruling section 32–1–20 was impliedly repealed by enactment of the Video Game Machines Act. We agree.

■ When faced with the question of whether a statute has been impliedly repealed by a subsequent statute, an appellate court must consider several principles of statutory construction and interpretation. Our "primary function in interpreting a statute is to ascertain the intent of the legislature." *Multi–Cinema, Ltd. v. South Carolina Tax Comm'n,* 292 S.C. 411, 413, 357 S.E.2d 6, 7 (1987). "[A]ll rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used as it is construed in the light of the intended purpose." *State v. Thrift,* 312 S.C. 282, 305, 440 S.E.2d 341, 354 (1994).

■ Repeal by implication is disfavored and is found only when two statutes are incapable of reconcilement. *Butler v. Unisun Ins. Co.,* 323 S.C. 402, 475 S.E.2d 758 (1996). "[T]he repugnancy must not only be plain, but the provisions of the two statutes must be incapable of any reasonable reconcilement; for if they can be construed so that both can stand, the [c]ourt will so construe them." *City of Rock Hill v. South Carolina Dept. of Health & Envtl. Control,* 302 S.C. 161, 167, 394 S.E.2d 327, 331 (1990). "[T]o effect an implied repeal of one statute by another, they must both relate to the same subject, and cover the same situations, since one statute is not repugnant to another unless there is such relation." *McCollum v. Snipes, et al.,* 213 S.C. 254, 268, 49 S.E.2d 12, 17–18 (1948). "It is presumed that the Legislature [is] familiar with prior legislation, and that if it intend[s] to repeal existing laws it would . . . expressly [do] so; hence, if by any fair or liberal construction two acts may be made to harmonize, no [c]ourt is

justified in deciding that the last repealed the first." *State v. Hood, et al.,* 181 S.C. 488, 491, 188 S.E. 134, 136 (1936).

In 1993, the South Carolina General Assembly enacted the Video Game Machines Act, S.C.Code Ann. §§ 12–21–2770 to 2809 (Supp.1997), to regulate the growing video poker industry in this State. Among other things, the Act limited the amount of money a player may win from coin-operated machines to $125 per location during any twenty-four hour period. S.C.Code Ann. § 12–21–2791 (Supp.1997).[3] The trial court found that "section 32–1–20 when construed with section 12–21–2791, create[s] an absurd and inconsistent result and defeat[s] the legislative intent of both Acts."

After careful consideration, we conclude section 32–1–20 was not impliedly repealed by enactment of the Video Game Machines Act, specifically section 12–21–2791, because these statutes are not repugnant to each other and are not incapable of a reasonable reconcilement. To the contrary, these statutes are consistent. Both statutes promote the same goal of limiting excessive gambling.

■ Sections 32–1–10 and 20 promote "a policy which prevents a gambler from allowing his vice to overcome his ability to pay. The legislature adopted a policy to protect a citizen and his family from the gambler's uncontrollable impulses." *Ardis v. Ward,* 321 S.C. 65, 69, 467 S.E.2d 742, 744 (1996) (quoting *Berkebile v. Outen,* 311 S.C. 50, 55, 426 S.E.2d 760, 763 (1993)). This policy is furthered by allowing a gambler to recover excessive gambling losses or another person to recov-

---

**3.** As originally enacted in 1993, section 12–21–2791 read:

Any location which operates or allows the operation of coin-operated machines pursuant to Section 12–21–2720(A)(3) which provides payouts authorized pursuant to Section 16–19–60 shall limit the cash payout for credits earned for free games to two thousand five hundred credits per player per location during any twenty-four hour period. The cash value of credits for each free game shall be limited to five cents.

S.C.Code Ann. § 12–21–2791 (Supp.1996).

Section 12–21–2791 was amended in 1997 by Act No. 53, 1997 S.C. Acts 247. This amendment: 1.) deleted "authorized pursuant to Section 16–19–60"; 2.) replaced "per player per location" with "a player a location"; and 3.) replaced "shall be" with "is." This amendment does not change the substance of section 12–21–2791, nor does it affect our decision.

er the losses if the gambler fails to do so. Likewise, the clear intent of section 12–21–2791 is to prevent excessive gambling by limiting the amount of cash payouts for winnings on video poker machines. Each advances the same policy of limiting excessive gambling through different means; sections 32–1–10 and 20 prevent excessive gambling losses and section 12–21–2791 prevents excessive gambling winnings.

An implied repeal is not justified simply because section 12–21–2791 deals specifically with video poker and was enacted 281 years after section 32–1–20. Each statute addresses different subjects pertaining to gambling, one winnings and the other losses. Nothing in the language of section 12–21–2791 suggests an intention by the General Assembly to implicitly repeal section 32–1–20. Since repeal by implication is disfavored and these two statutes "harmonize," we would not be "justified in deciding that the last repealed the first." *Hood*, 181 S.C. at 491, 188 S.E. at 136; *Butler, supra.* The General Assembly is presumed to have known of section 32–1–20 when it enacted section 12–21–2791. *Hood, supra.* The General Assembly chose not to repeal section 32–1–20. Therefore, we cannot now effect through judicial means what is solely within the authority of the legislature. *Adkins v. Comcar Indus., Inc.,* 316 S.C. 149, 151–52, 447 S.E.2d 228, 230 (Ct.App.1994) (An appellate court "has no legislative powers. Our sole function is to determine and, within constitutional limits, give effect to the intention of the legislature while the responsibility for the justice or wisdom of legislation rests exclusively with the legislature, whether or not we agree with the laws it enacts." (citation omitted)), *aff'd,* 323 S.C. 409, 475 S.E.2d 762 (1996).

## III. CONCLUSION

For the foregoing reasons, this case is

**REVERSED and REMANDED.**

HOWELL, C.J., and CURETON, J., concur.