517 S.E.2d 689

Esther C. WILLIAMS, Petitioner,

v.

David G. WILLIAMS, as Personal Representative of the Estate of Ralph Howard Williams, Respondent.

No. 24958.

Supreme Court of South Carolina.

Heard May 27, 1999.

Decided June 28, 1999.

E.T. Moore, Jr., of Barnwell, for petitioner.

Thomas B. Bryant, III, of Bryant, Fanning & Shuler, of Orangeburg, for respondent.

## ON WRIT OF CERTIORARI TO
## THE COURT OF APPEALS

BURNETT, Justice:

This Court granted certiorari to review the Court of Appeals' opinion in *Williams v. Williams,* 329 S.C. 569, 496

S.E.2d 23 (Ct.App.1998). We reverse and remand for a determination of the value of petitioner's elective share.

## FACTS

Ralph Williams died on December 11, 1994. His will, dated June 25, 1986, was admitted to probate and Respondent David Williams (the PR) was appointed personal representative. Ralph Williams' widow, petitioner, timely filed a petition for her elective share with the probate court. Petitioner, through her attorney, mailed a copy of her elective share claim to the PR's attorney, Thomas Bryant, III. By letter to petitioner's attorney dated July 12, 1995, Bryant acknowledged receipt of the petition, acknowledged delivering the letter attached to the petition to the PR, and reported the PR's response.

The PR disputed petitioner's claim for elective share. The probate court, concluding petitioner failed to strictly comply with S.C.Code Ann. § 62–2–205(a) (Supp.1998), disallowed petitioner's claim. The circuit court and the Court of appeals affirmed.

## ISSUE

Did the Court of Appeals err in finding petitioner failed to comply with the requirements set out in S.C.Code Ann. § 62–2–205(a) (Supp.1998)?

## DISCUSSION

■ The South Carolina Probate Code provides a procedure whereby the surviving spouse of a person domiciled in this state may claim an elective share of one-third of the decedent's probate estate. Section 62–2–205(a) provides:

The surviving spouse may elect to take his elective share in the probate estate by filing in the court and mailing or *delivering to the personal representative, if any, a petition for the elective share* within eight months after the date of death or within six months after the probate of the decedent's will, whichever limitation last expires.

(emphasis added).

The Court of Appeals held petitioner failed to strictly comply with § 62–2–205 because she did not directly deliver

the claim to the PR. The court found strict compliance was required by *Simpson v. Sanders*, 314 S.C. 413, 445 S.E.2d 93 (1994).

In *Simpson*, the issue was whether the surviving spouse had timely mailed the notice to the personal representative. The personal representative admitted actual notice of the surviving spouse's intent to claim his elective share; however, she claimed she never received a copy of the petition. The probate court found actual notice of the claim was sufficient and refused to decide if the surviving spouse actually mailed the petition to the personal representative. This Court held because the elective share provision is a statute of creation, the surviving spouse must strictly comply with its requirements. The Court found actual notice of a claim was not sufficient under the statute. Instead, the petition must be mailed to the personal representative. Accordingly, the Court remanded the case to probate court to determine if the surviving spouse complied with the statute by mailing the petition to the personal representative.

The Court of Appeals reads *Simpson* too broadly. The issue in *Simpson* was to whom the elective share petition should be mailed. The meaning of the term "delivery" under § 62–2–205(a) was not an issue.[1]

Petitioner claims the statutory term "delivery" should be construed to allow constructive delivery of an elective share claim to the PR through his personal attorney.

In interpreting the statutory meaning of the phrase "delivering to the personal representative," this Court's primary function is to ascertain the intention of the legislature. Unless there is something in a statute requiring a different

---

1. Petitioner attempts to analogize this case with *In re Estate of Tollison*, 320 S.C. 132, 463 S.E.2d 611 (Ct.App.1995). *Tollison* interprets the manner of delivery of a claim against the estate to the PR pursuant to S.C.Code Ann. § 62–3–804(1) (Supp.1998). The language of this provision is identical to § 62–2–205(a) in that both require mailing or delivering the claim to the PR. In *Tollison*, the Court of Appeals, found the provision was procedural and applied a liberal construction. The court held the mailing of the claim to the PR, through his attorney, constituted proper presentation of the claim. However, because this Court has held the elective share statute is to be strictly construed, *Tollison* is not applicable.

interpretation, the words must be given their ordinary meaning. *Mullinax v. J.M. Brown Amusement Co., Inc.,* 326 S.C. 453, 485 S.E.2d 103 (Ct.App.1997), *aff'd,* 333 S.C. 89, 508 S.E.2d 848 (1998). Where a statute is complete, plain, and unambiguous, legislative intent must be determined from the language of the statute itself. The Court should consider not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1857, 140 L.Ed.2d 1104 (1998).

Delivery means "the act by which the res or substance thereof is placed within the actual or constructive possession or control of another." *Black's Law Dictionary* 498 (6th ed. 1990). Section 62-2-205(a) does not state the delivery must be direct or that it must be accomplished by service pursuant to Rules 4 & 5, SCRCP. Moreover, the ordinary meaning of delivery does not dictate that the act be accomplished only by means of personal service as defined by Rules 4 & 5, SCRCP.[2] If the legislature had intended delivery of notice of the elective share claim be served under the strictures of Rules 4 & 5, the legislature could have so provided by using the words "personal service" or "service" as it did in other sections of the Probate Code.[3] By using the term "delivery", the legislature unambiguously expressed its intent that service is not required and this Court should not read this requirement into the statute. Accordingly, "delivery" is not the equivalent of "service" and delivery under § 62-2-205(a) may be accomplished without following Rules 4 & 5, SCRCP.

■ Further, the ordinary meaning of the language of the elective share statute, when read in conjunction with the purpose of the statute and the policy of the law, supports the conclusion that "delivery" should be interpreted more expansively. The legislative purpose behind the elective share

---

2. Rule 4, SCRCP, applies to service of the complaint and summons. Rule 5, SCRCP, applies to service of the answer, other pleadings, motions and orders.

3. See S.C.Code Ann. § 62-3-1305 (1987) (regarding sale of real estate); § 62-1-401 (1987) (regarding personal service in guardianship proceedings).

statute is to protect the family unit from becoming society's ward by preventing impoverishment of the surviving spouse. *Berkebile v. Outen,* 311 S.C. 50, 55, 426 S.E.2d 760, 763 (1993); *see also Mullinax, supra.* The purpose of requiring the surviving spouse to notify the PR is to notice the estate of the claim. By applying an erroneous interpretation of "delivery," courts place a surviving spouse in an impaired economic position contrary to the statute's purpose. Therefore, under § 62–2–205(a), delivery only requires placing the petition in the actual or constructive possession or control of the personal representative.

Petitioner claims the Court of Appeals failed to address whether delivering the claim for an elective share to Bryant, as the PR's personal attorney, satisfied the requirements of the statute.

Although the Court of Appeals did not expressly rule petitioner failed to prove Bryant was the PR's personal attorney, this finding can be inferred from the Court of Appeals' reference to Bryant as the attorney for the estate. In our opinion, the Court of Appeals erred in concluding Bryant was only the attorney for the estate. In the July 12, 1996 letter, Bryant acknowledged receipt of the petition for an elective share and suggested he discussed the petition with his client, the PR, thereby indicating the PR at least constructively controlled the petition. Moreover, at oral argument before this Court, Bryant conceded the existence of an attorney/client relationship between the PR and himself. The Court of Appeals should have considered the effect of delivery of the elective share claim to Bryant, as the PR's personal attorney.

■ This Court has consistently recognized an attorney is the "alter-ego of his client" and the attorney stands in the place of the client. *Anderson v. Anderson,* 198 S.C. 412, 18 S.E.2d 9 (1941); *see also Equilease Corp. v. Weathers,* 275 S.C. 478, 272 S.E.2d 789 (1980); *Culbertson v. Clemens,* 322 S.C. 20, 471 S.E.2d 163 (1996). "Notice to an attorney is effective as notice to the client when the notice is received in the course of the transaction in which the attorney is acting." 7 Am.Jur.2d *Attorneys at Law* § 148 (1997).

Bryant was the PR's personal attorney, and delivery of the elective share claim to Bryant, as the "alter-ego of his client," was delivery to the PR under § 62–2–205(a).[4]

**REVERSED AND REMANDED.**[5]

FINNEY, C.J., TOAL, MOORE, and WALLER, JJ., concur.

---

4. We leave for another time the question whether the attorney/client relationship between the attorney for the estate and the personal representative is sufficient to trigger the "alter-ego" theory of delivery.

5. Because we decide delivery was effective when made to Bryant, as the "alter-ego of the client," we decline to address petitioner's remaining arguments.