THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 L.A. Barrier
 & Son, Inc., Respondent,
 v.
 South Carolina
 Department of Transportation, Appellant.
 
 
 

Appeal from Richland County
  Paige J. Gossett, Administrative Law
Judge

Unpublished Opinion No.   2008-UP-418
Heard June 3, 2008  Filed July 21, 2008 

REVERSED

 
 
 
 Deborah Brooks Durden, of Columbia, for Appellant.
 John Julius Pringle, Jr., of Columbia, for Respondent.
 
 
 

PER CURIAM:  The
 South Carolina Department of Transportation (SCDOT) appeals from the
 Administrative Law Courts (ALC) order requiring SCDOT to grant L.A. Barrier
 & Son, Inc.s (L.A. Barrier) application for certification as a
 Disadvantaged Business Enterprise (DBE).  We reverse.  
BACKGROUND
The
 present case concerns L.A. Barriers application to SCDOT for certification as
 a DBE.  Federal regulation requires states that receive federal highway funding
 to implement DBE programs.   49 C.F.R. § 26.3 (2007).  DBE programs were
 created to ensure nondiscrimination in the award of Department of
 Transportation contracts and to provide a level playing field for eligible
 businesses.  49 C.F.R. § 26.1 (2007).  As a recipient of federal highway
 funding, South Carolina created its DBE program through section 12-28-2930 of
 the South Carolina Code (2000), requiring SCDOT to expend a minimum amount of
 state source highway funds through contracts with DBEs.  
South
 Carolinas DBE program is regulated under
 25A S.C. Code Ann. Regs. 63-700 to 63-718 (Supp. 2007).  Under 25A S.C. Code
 Ann. Reg. 63-702, to be eligible for participation in both the federal and
 state DBE programs in South Carolina, a firm must first be certified by SCDOT
 as a bona fide [DBE] pursuant to the standards and procedures set forth in
 Regulations 63-703 and 63-704 and 49 C.F.R. Part 26.  The South Carolina
 regulations incorporate the federal standards for determining DBE status found
 in 49 C.F.R. § 26.  
Under
 the applicable regulations, a DBE is defined as a for-profit small business,
 which is owned and controlled by one or more individuals who are both socially
 and economically disadvantaged.  49 C.F.R. § 26.5 (2007); 25A S.C. Code Ann.
 Reg. 63-701 (Supp. 2007).  To meet the ownership requirement, a firm must be
 at least 51 percent owned by socially and economically disadvantaged
 individuals.  49 C.F.R. § 26.69(b) (2007).  Under the regulations, women are
 presumed to be socially and economically disadvantaged individuals but must still
 show they have a net worth not exceeding $750,000 to qualify as a disadvantaged
 individual.  49 C.F.R. § 26.67(a)(1) - (2)(i) (2007).  In this appeal, SCDOT
 argues L.A. Barrier is not entitled to certification as a DBE because it does
 not meet the ownership requirements of 49 C.F.R. § 26.69 (2007).  
FACTS
L.A. Barrier is a
 closely held corporation in the business of hauling and transporting road
 construction materials.  L.A. Barrier is one of three corporations owned by
 members of the Barrier and Tyson families in Lexington, South Carolina.  The
 other two corporations are B & T Sand Co., Inc. (B & T Sand) and B
 & T Investments, Inc. (B & T Investments). 
Prior
 to July 1, 2006, Betty Tyson (Betty) owned 25,000 shares of L.A. Barriers
 stock, while Bill Barrier (Bill) and Bob Barrier (Bob) each owned 12,000
 shares, and Electa Barrier (Electa) owned 1,000 shares.  On or about July 1,
 2006, Betty transferred all 25,000 of her shares without consideration to Lisa
 Tyson (Lisa), who is married to Bettys son, Joel Tyson (Joel).  Also on or
 about July 1, 2006, Electa transferred 500 shares to Lisa for $4,210.  Lisa
 paid for the shares using funds from a joint checking account she shared with
 Joel.  At the time of the transfers, Bettys net worth exceeded $750,000, so
 she no longer qualified as a disadvantaged individual.  After the two
 transfers, Lisa, the new president of L.A. Barrier, owned fifty-one percent of
 L.A. Barriers stock.   
On July 31, 2006,
 L.A. Barrier applied to SCDOT for certification as a DBE.  Subsequently, in a letter
 dated December 8, 2006, SCDOT denied the application.  The letter outlined
 SCDOTs reasons for denying certification, including: (1) Betty was involved in
 an affiliate firm through her ownership of stock in B & T Sand; (2) Betty
 was engaged in a business relationship with L.A. Barrier as its landlord
 because she owned a one-half interest in the building and property where L.A.
 Barrier operates; and (3) Joel had not renounced his interest in the ownership
 interest of the 500 shares Lisa purchased using funds from their joint checking
 account.  After receiving SCDOTs letter, L.A. Barrier requested a contested
 case hearing before the ALC.
Between
 the time of SCDOTs denial of certification and the contested case hearing,
 Betty and Joel took several steps to correct the errors causing SCDOTs denial
 of L.A. Barriers application.  On April 9, 2007, Betty transferred her
 one-half interest in the building and real estate where L.A. Barrier operates
 to Tommy Tyson (Tommy), her husband, without consideration.  On the same day,
 she transferred all of her stock in B & T Sand to Joel, her son, without
 consideration.  Lastly, Joel signed a document renouncing his interest in the
 500 shares of stock purchased with funds from the joint checking account he
 shared with Lisa. 
The contested case
 hearing was held on May 1 and 2, 2007.  Ultimately, the ALC determined L.A.
 Barrier qualified for DBE certification and ordered SCDOT to grant L.A.
 Barriers application.  This appeal follows.  
STANDARD OF REVIEW
Section 1-23-610 of the South Carolina Code (Supp. 2007)
 sets forth the standard of review when the Court of Appeals
 is sitting in review of a decision by the ALC on appeal
 from an administrative agency.  The review of the administrative law judges
 order must be confined to the record. S.C. Code Ann. §
 1-23-610(C).  Under section 1-23-610(C), the Court of Appeals

 may affirm the decision or
 remand the case for further proceedings; or [the Court] may reverse or modify
 the decision if the substantive rights of the petitioner [have] been prejudiced
 because [] the finding, conclusion, or decision is:
 
 (a) in violation of constitutional or statutory
 provisions;
 (b) in excess of the statutory authority of the
 agency;
 (c) made upon
 unlawful procedure;
 (d)
 affected by other error of law;
 (e) clearly erroneous in view of the reliable,
 probative, and substantial evidence on the whole record; or
 (f) arbitrary or capricious or characterized by abuse
 of discretion or clearly unwarranted exercise of discretion.
 

            LAW/ANALYSIS
SCDOT
 argues L.A. Barrier does not qualify as a DBE because Joel did not effectively
 renounce his interest in the 500 shares of stock Lisa acquired with funds from
 their joint checking account, and as a result, Lisa does not have sole
 ownership of fifty-one percent of the firm.  Specifically, SCDOT argues: (1)
 while Joel renounced his interest in the stock, he did not also renounce his
 interest in the jointly held assets used to purchase the stock, and (2) the
 document whereby Joel renounced his interest in the stock was not included in
 L.A. Barriers application for certification.   We agree.  
Under
 49 C.F.R. § 26.69(i) (2007), when marital assets are used to acquire a
 disadvantaged individuals ownership interest in a business or firm, the finder
 of fact must apply the following rules: 

 (1)
 When marital assets (other than the assets of the business in question), held
 jointly or as community property by both spouses, are used to acquire the
 ownership interest asserted by one spouse, [the entity determining DBE status]
 must deem the ownership interest in the firm to have been acquired by that
 spouse with his or her own individual resources, provided that the other spouse
 irrevocably renounces and transfers all rights in the ownership interest in the
 manner sanctioned by the laws of the state in which either spouse or the firm
 is domiciled. . . . 
 (2) A
 copy of the document legally transferring and renouncing the other spouses
 rights in the jointly owned or community assets used to acquire an ownership
 interest in the firm must be included as part of the firms application for DBE
 certification.

Looking at the language of the section as a whole, it
 is clear the purpose of the regulation is to ensure the ownership interest is
 solely attributable to the disadvantaged individual for the purpose of
 determining whether the firm meets the fifty-one percent threshold of 49 C.F.R.
 § 26.69(b).  While 49 C.F.R. § 26.69(i) sets forth the general rule that some
 portion of the ownership interest is attributable to the disadvantaged
 individuals spouse if marital assets are used to purchase the ownership
 interest, the section also provides an exception when the spouse has renounced
 his or her portion of the ownership interest.  
However, subsections (1) and (2) of 49 C.F.R. §
 26.69(i) address the method of renunciation differently.  While subsection (1)
 mandates that the ALC must treat an ownership interest as being acquired with the
 individuals own funds when the spouse has renounced any rights in the ownership
 interest, subsection (2) refers to renunciation of the assets used
 to acquire the ownership interest.  
SCDOT first argues Joel must have renounced his
 interest in the assets used to acquire the stock in addition to the stock
 itself to comply with the terms of 49 C.F.R. 26.69(i).  We agree. 
When the terms of a statute are clear, the court must
 apply those terms according to their literal meaning.  Paschal v. State
 Election Commn, 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995).  This Court
 cannot construe a statute without regard to its ordinary and plain meaning and
 may not resort to a forced interpretation in an effort to expand or limit the
 scope of a statute.  Berkebile v. Outen, 311 S.C. 50, 55, 426 S.E.2d 760,
 763 (1993).  Furthermore, the construction of a statute by the agency charged
 with its administration will be accorded the most respectful consideration and
 will not be overruled absent compelling reasons.  Dunton v. S.C. Bd. of
 Examrs in Optometry, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987).  
L.A. Barrier argues a renunciation of the 500 shares
 of stock is sufficient to comply with the statute; however, a plain reading of
 the statute demonstrates otherwise.  Because Lisa purchased the 500 shares of
 stock with funds from Joel and Lisas joint checking account, the statute
 mandates that SCDOT apply 49 C.F.R. § 26.69(i).  The plain language of 49
 C.F.R. § 26.69(i) requires the non-disadvantaged spouse to renounce both the rights in the ownership interest and the rights in the jointly owned assets
 used to acquire the ownership interest.  See 49 C.F.R. § 26.69(i)(1) - (2).  
Although Joel may have satisfied 49 C.F.R. §
 26.69(i)(1) by renouncing his interest in the stock by the date of the hearing,
 he failed to satisfy 49 C.F.R. § 26.69(i)(2) by never renouncing his ownership
 interest in the joint checking account.  While we recognize the 500 shares of
 stock represent a very small portion of the overall ownership interest, the
 fact remains without a full and proper renunciation, these shares must be
 attributed in part to Joel, such that Lisas ownership interest falls short of
 the fifty-one percent ownership requirement set forth in 49 C.F.R. § 26.69(b). 
 Because L.A. Barrier did not meet the eligibility requirements of 49 C.F.R. §
 26, SCDOT properly denied its application for certification as a DBE.  See 25A S.C. Code Ann. Reg. 63-703(A) (stating SCDOT will certify a firm as a bona
 fide DBE under the State or Federal DBE Program if [SCDOT] determines that the
 firm meets the eligibility requirements of 49 C.F.R. Part 26).
In
 light of our holding on this issue, it is not necessary to address SCDOTs
 remaining arguments.  Futch v. McAllister Towing of Georgetown, 335 S.C.
 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need
 not address additional issues if the resolution of another issue is
 dispositive). 
CONCLUSION
For the foregoing
 reasons, the ALCs order is
REVERSED.
WILLIAMS, THOMAS, and PIEPER, JJ., concur.