522 S.E.2d 137

**Mary GENTRY and Ralph Bryan, Appellants,**

v.

**Kenneth M. YONCE, d/b/a, Yonce's Stop N Shop; Shirley Fincher, formerly d/b/a, Star Stop N Shop; Walter M. Fulmer, d/b/a, Fulmer's Amoco; Joseph A. Rhinehart, d/b/a, Country Peddler and The Country Peddler; H & S Amusements, Inc.; William Gordon Silver and James Harold Matthews, d/b/a, H & S Amusements; and Willard Britton, d/b/a, Association Amusements, Respondents.**

No. 24971.

Supreme Court of South Carolina.

Heard June 22, 1999.

Decided July 13, 1999.

2

4

Douglas H. Westbrook, of Charleston, for appellants.

James M. Griffin, of Simmons, Griffin & Lydon, of Columbia, for respondents.

Lawrence E. Richter, Jr., and Saul Gliserman, of The Richter Firm, of Mount Pleasant; and R. Randall Bridwell, of Columbia, all for Amicus Curiae Legacy Alliance.

Dwight F. Drake and B. Rush Smith, III, both of Nelson, Mullins, Riley & Scarborough, L.L.P.; and Richard A. Harpootlian, of the Law Offices of Richard Harpootlian, all of Columbia, for Amicus Curiae South Carolina Coin Operators Association.

MOORE, Justice:

Appellants brought this class action suit alleging causes of action under the Racketeer Influenced and Corrupt Organizations Act (RICO—18 U.S.C. § 1961 et seq.) and the Unfair Trade Practices Act (UTPA—S.C.Code Ann. § 39–5–20 et seq.).[1] Respondents are owners and operators of video poker machines located in Saluda and Newberry Counties. The trial court granted respondents' motion to dismiss the RICO and

---

[1]. Appellants did not appeal the circuit court's dismissal of their conversion cause of action. Furthermore, the circuit court did not rule upon the motion to dismiss the cause of action brought pursuant to S.C.Code Ann. § 32–1–10 (1977), which provides for the recovery of gambling losses.

UTPA causes of action. We affirm in part and reverse in part.

## ISSUES

1) Did the trial court err in dismissing the RICO claim?

2) Did the trial court err in dismissing the UTPA claim?

## DISCUSSION

■■■■ Initially, we note that in deciding a motion to dismiss pursuant to 12(b)(6), SCRCP, the trial court should consider only the allegations set forth on the face of the plaintiff's complaint and a 12(b)(6) motion should not be granted if "facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case." *Stiles v. Onorato,* 318 S.C. 297, 300, 457 S.E.2d 601, 602 (1995).[2] The question is whether, in the light most favorable to the plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief. Further, the complaint should not be dismissed merely because the court doubts the plaintiff will prevail in the action. *Toussaint v. Ham,* 292 S.C. 415, 357 S.E.2d 8 (1987). *See also Kennedy v. Henderson,* 289 S.C. 393, 346 S.E.2d 526 (1986) (where there is cause for doubt, or it is clear that the ends of justice may well be promoted by a trial on the merits, a demurrer should be denied where novel issues are present or are involved); *Springfield v. Williams Plumbing Supply Co.,* 249 S.C. 130, 153 S.E.2d 184 (1967).

### 1) RICO claim

Respondents moved to dismiss the RICO claim on the grounds that appellants: failed to state sufficient facts to

---

**2.** Appellants contend the circuit court erred in considering any of the grounds for respondents' pre-answer motions that were based upon a defense not listed in Rule 12(b), SCRCP. We agree. In *Glenn v. School Dist. No. Five,* 294 S.C. 530, 366 S.E.2d 47 (Ct.App.1988), the Court of Appeals held the statute of limitations is not a defense listed under Rule 12(b) that may be raised by pre-answer motion. Similarly, here, respondents cannot raise any defense or objection that is not permitted to be raised pre-answer in a Rule 12(b) motion, for example lack of standing. Thus, we have addressed only the issues necessary to decide if the complaint states sufficient facts under Rule 12(b)(6).

6

constitute a cause of action; failed to plead fraud with particularity; lacked standing because the injuries complained of were not proximately caused by any alleged RICO violation; and failed to plead the RICO claim with the particularity required pursuant to Rule 9(b), SCRCP.

The circuit court dismissed the RICO cause of action on the ground that complaints alleging RICO violations are subject to the same stringent pleading requirements applicable to fraud claims. The circuit court also held appellants failed to plead the existence of two "predicate acts" that constitute a "pattern of racketeering" as required by RICO.[3]

A) Pleading Requirements

The circuit court held that complaints alleging RICO violations are subject to the same stringent pleading requirements applicable to fraud claims pursuant to Rule 9(b), SCRCP.[4] We disagree.

The circuit court cited three cases to support its conclusion that RICO actions are subject to the particularity pleading requirement of Rule 9(b). However, in each of these cases, the underlying predicate acts alleged in support of the RICO action were acts of fraud. *Florida Dep't of Ins. v. Debenture Guar.*, 921 F.Supp. 750 (M.D.Fla.1996) (allegations of federal securities fraud); *Grant v. Union Bank*, 629 F.Supp. 570, 575 (D.Utah 1986) (allegations of mail and wire fraud); *Crystal v. Foy*, 562 F.Supp. 422 (S.D.N.Y.1983) (allegations of fraudulent conduct violating the Securities Exchange Act). Here, the

---

3. In order to establish a RICO violation, appellants are required to establish the following: (1) the commission of two or more "predicate acts" (2) constituting a "pattern" (3) of "racketeering activity" through which (4) the culpable person (5) invests in, maintains an interest in, participates in, or conspires to do any of the preceding in (6) an enterprise, and (7) such activities affect interstate commerce. 18 U.S.C. § 1961–1962 (1984 & Supp.1993). *Roper v. Dynamique Concepts*, 316 S.C. 131, 447 S.E.2d 218 (1994). "Racketeering activity" is defined in § 1961(1)(A) to include any act or threat involving gambling which is chargeable under State law and punishable by imprisonment for more than one year.

4. Rule 9(b), SCRCP, provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

underlying predicate acts alleged in support of the RICO cause of action are violations of S.C.Code Ann. § 12–21–2804(B) (Supp.1998) which prohibits the offering of special inducements [5] and S.C.Code Ann. § 12–21–2804(A) (Supp. 1998) which prohibits businesses from receiving primary or substantial gross proceeds from video gaming devices. Thus, the alleged underlying predicate acts are not based in fraud.[6]

As respondents point out, some courts have specifically held that the same standard of particularity should be applied to all RICO claims. *See, e.g. Plount v. American Home Assurance Co.*, 668 F.Supp. 204 (S.D.N.Y.1987); *Schnitzer v. Oppenheimer & Co.*, 633 F.Supp. 92 (D.Or.1985); *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667 (N.D.Ga.1983). However, contrary to the respondents' contention, the specificity requirement for pleading RICO claims is not well-settled. Many courts have not been persuaded by the reasoning of the courts that have applied Rule 9(b) to all RICO actions and have limited the application of Rule 9(b) to fraud-based RICO claims. *See United States v. District Council of N.Y. City*, 778 F.Supp. 738 (S.D.N.Y.1991); *United States v. Bonanno Organized Crime Family*, 683 F.Supp. 1411 (E.D.N.Y.1988); *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 792 n. 7 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). "Logically it follows, at least in most circuits, that when predicate acts are not based on fraud, there is no pleading requirement of particularity." 2 James Wm. Moore, Moore's Federal Practice § 9.03(6)(b) (3rd ed. 1999). "*Fraud claims* brought under the RICO Act are subject to the particularity requirements of Rule 9(b)." 5 Wright & Miller, Federal Practice and Procedure 2d § 1251.1 (1988) (emphasis added).

Furthermore, Rule 9(b) by its terms applies only to those cases in which fraud or mistake are averred. The particularity requirement is a means for courts to summarily dispose of frivolous lawsuits based on fraud. Courts applying the partic-

---

**5.** In this case, appellants allege the offering of a "jackpot" is a special inducement.

**6.** Appellants also allege violations of § 12–21–2791. As discussed more fully herein, on appeal, appellants concede the circuit court correctly held a violation of this section could not serve as a predicate act.

ularity requirement to all RICO allegations have reasoned that the purposes advanced by Rule 9(b) are equally served by applying the rule to non-fraud RICO claims. These courts have also concluded that RICO allegations are even more damaging to a defendant's reputation by labeling him with the stigma-laden term "racketeer." *See Plount* ("Yet all of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions."). *But see Sedima v. Imrex Co.*, 473 U.S. 479, 492, 105 S.Ct. 3275, 3283, 87 L.Ed.2d 346 (1985) ("As for stigma, a civil RICO proceeding leaves no greater stain than do a number of other civil proceedings"); *Rodonich v. House Wreckers Union Local 95*, 627 F.Supp. 176, 178 (S.D.N.Y.1985) (questioning propriety of altering RICO's pleading burden). However, federal courts have a greater need to summarily treat frivolous RICO claims than fraud claims because the civil RICO treble damages clause provides a strong incentive for plaintiffs to convert the garden variety fraud cause of action into a racketeering action.

We have considered the reasoning of the above cases and we agree with the cases that do not require pleading to comply with Rule 9 unless fraud is alleged as the predicate act.[7] There are many actions that could damage a person's reputation and particularity should not be required in each of these cases. This was simply not intended by the enactment of Rule 9. "Since the rule is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules, its scope of application should be construed narrowly and not extended to other legal theories or defenses." 5 Wright and Miller Federal Practice and Procedure 2d § 1297 (1990). Accordingly, the circuit court's holding that the particularity requirement of Rule 9(b) applies in this case is error.[8]

---

[7]. Another consideration often cited by the cases discussing the pleading requirements is Rule 8. Often courts read the rules together and specifically attempt to harmonize Rule 8 and Rule 9. *See e.g. Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir.1985) (acknowledging and resolving a "potential conflict" between Rule 8's notice pleading and Rule 9's particularity pleading).

[8]. We find no distinction in the pleading requirement between allegations of mail fraud and common law fraud. Thus, we agree with the

B) "Predicate Acts" [9]

■ The circuit court also held that appellants did not plead the existence of two predicate acts that could constitute a pattern of racketeering. The circuit court held that the alleged violations of two sections of the South Carolina Video Game Machines Act cannot serve as predicate offenses under RICO.[10] We disagree.

■ In their complaint, appellants allege respondents have violated §§ 12-21-2791 and 12-21-2804(A) and (B). Section 12-21-2791 provides for a $125 cap on the amount that may be paid out as winnings on a video game machine. This section does not provide any penalty. Violations of this specific section are punishable under § 12-54-40(H) which provides for a civil penalty and *not* any criminal penalty.[11] Thus, a

---

circuit court that mail fraud must be pled with particularity and affirm the dismissal of this part of the complaint.

9. The circuit court summarily held that a violation of § 12-21-2804(A) could not be used as a predicate act since this provision had been ruled unconstitutional for vagueness in *Reyelt et al. v. South Carolina Tax Comm'n*, Civil Action No. 6:93-1491-3 (D.S.C. July 5, 1994). However, this decision is not binding on this Court. *See Phillips v. Periodical Publishers' Serv. Bureau, Inc.*, 300 S.C. 444, 388 S.E.2d 787 (1989). Accordingly, the circuit court erred in holding a violation of this section could not be a predicate act solely based upon this case. *Kennedy v. Henderson, supra* (demurrer should be denied when novel issues are involved).

10. Legacy Alliance filed an amicus brief in support of the reversal of the grant of respondents' motion to dismiss. In its amicus brief, Legacy Alliance sets forth an interesting argument that the predicate act could actually be a violation of the federal Unlawful Gambling Business Act, 18 U.S.C. § 1955, which prohibits the use of interstate instrumentalities by anyone who conducts a business that violates the State law in which it is conducted. Legacy Alliance states that a violation of any of the South Carolina Code sections under the Video Game Machines Act could serve as a predicate act because the federal law references any State law and does not limit it to those which are punishable by an imprisonment of one year. However, appellants are relying strictly upon 18 U.S.C. § 1961(1)(A) which requires that a violation of the State law be punishable by imprisonment for more than one year. Accordingly, this argument is inapplicable to this case.

11. The Department of Revenue has applied § 12-54-40(H) for violations of § 12-21-2791. Section 12-54-40(H) provides: "A person who must obtain a license or purchase stamps for identification purposes,

violation of § 12–21–2791 cannot be a predicate offense for a RICO violation. The circuit court correctly ruled that § 12–21–2791 cannot be a predicate act and, in fact, appellants concede this in their reply brief.

Section 12–21–2804(B) provides: "No person who maintains a place or premises for the operation of machines licensed under Section 12–21–2720(A)(3) [12] may advertise in any manner for the playing of the machines *nor may a person offer or allow to be offered any special inducement* to a person for the playing of machines permitted under Section 12–21–2720(A)(3)." (emphasis added). Section 12–21–2804(F) provides in pertinent part: "A person violating subsections (A), (B), (D), or (E) of this section is subject to a fine of up to five thousand dollars to be imposed by the commission. The commission, upon a determination that the violation is wilful, may refer the violation to the Attorney General or to the appropriate circuit solicitor for criminal prosecution, and, upon conviction, the person must be fined not more than ten thousand dollars or imprisoned not more than two years, or both . . ." Appellants contend respondents violated this section by advertising that "jackpots" could be won which were in excess of the $125 limit. The circuit court held that § 12–21–2804(B) "does not apply to the logos and other identifying

and who fails to obtain or display the license properly, or to affix the stamps properly, or to comply with statutory provisions, is subject to a penalty of not less than fifty dollars nor more than five hundred dollars for each failure. For failure to obtain or display a license as prescribed in Sections 12–21–2720 and 12–21–2730, the penalty is fifty dollars for each failure to comply."

12. Section 12–21–2720(A) provides in part:

Every person who maintains for use or permits the use of, on a place or premises occupied by him, one or more of the following machines or devices shall apply for and procure from the South Carolina Department of Revenue a license effective for two years for the privilege of making use of the machine in South Carolina and shall pay for the license a tax of fifty dollars for each machine in item (1), two hundred dollars for each machine in item (2), and four thousand dollars for each machine in item (3): . . .

(3) a machine of the nonpayout type, in-line pin game, or video game with free play feature operated by a slot in which is deposited a coin or thing of value except machines of the nonpayout pin table type with levers or "flippers" operated by the player by which the course of the balls may be altered or changed.

information which physically comprise the video game ma-, chine." We disagree.

Advertising that jackpots greater than $125 may be won is more than a logo.[13] At this stage of these proceedings, we think that the advertising or offering of jackpots could·be construed as a special inducement and thus could support a RICO claim.[14] Accordingly, the circuit court erred in dismissing appellants' RICO cause of action alleging violations of §§ 12–21–2804(A) and (B) as predicate acts.[15]

### 2) UTPA

Respondents moved to dismiss the UTPA claim on the grounds that appellants: failed to state sufficient facts to constitute a cause of action; failed to plead the UTPA claim with the particularity required pursuant to Rule 9(b), SCRCP; the conduct complained of is authorized by the S.C. Video Game Machines Act (S.C.Code Ann. § 12–21–2770 (Supp. 1998)); and the actions are exempt from the UTPA pursuant to S.C.Code Ann. § 39–5–40 (1985). Again, only the grounds based upon Rule 12(b) should have been considered by the circuit court. *Glenn v. School Dist. Five, supra.*

The circuit court held the conduct which appellants contend forms the basis for a UTPA cause of action are exempt from the UTPA pursuant to § 39–5–40. Section 39–5–40 (emphasis added) provides, in part: "Nothing in this article shall apply to: (a) Actions or transactions *permitted under laws* adminis-

---

**13.** To hold otherwise, would mean that offers for free food and drinks, which are clearly prohibited, when part of the machine would not be special inducements.

**14.** The circuit court also cites *44 Liquormart v. Rhode Island*, 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996), for the proposition that interpreting this statute to apply to logos would render the statute unconstitutionally broad. *44 Liquormart* dealt with a complete ban on price advertising for alcohol in Rhode Island. It is simply inapplicable to this situation.

**15.** We note the General Assembly recently passed legislation which specifically provides that an operator is prohibited from offering an inducement of cash other than authorized payouts and jackpots. This legislation takes effect December 1, 1999, if a majority of the voters in the November 2nd referendum decide that cash payouts on video game machines should continue.

tered by any regulatory body or officer acting under statutory authority of this State or the United States or actions or transactions permitted by any other South Carolina State law."

The circuit court held that appellants have not alleged that advertising a jackpot is a deceptive act because appellants have not alleged that respondents have not paid out more than $125 in winnings. The circuit court also held that appellants had failed to allege either that the statements regarding the jackpots were false or that they were ignorant of the $125 limit.

Section 12–21–2791 states that operators "shall limit the cash payout for credits earned for free games to two thousand five hundred credits a player a location during any twenty-four hour period. The cash value of credits for each free game is limited to five cents." Thus, there is a cap of $125 per 24–hour period on payouts. Again, we note appellants are alleging a violation of the inducement section (§ 12–21–2804(B)) and not solely the payout section (§ 12–21–2791). The advertising of the jackpot and the paying out of the jackpot are two separate violations under the Gaming Act.

Under the UTPA, it is unlawful to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C.Code Ann. § 39–5–20 (1985). An act is "unfair" when it is offensive to public policy or when it is immoral, unethical, or oppressive. An act is "deceptive" when it has a tendency to deceive. *Harris v. NCNB*, 85 N.C.App. 669, 355 S.E.2d 838 (1987) (cited in *Young v. Century Lincoln–Mercury, Inc.*, 302 S.C. 320, 396 S.E.2d 105 (Ct.App.1989), *reversed on other grounds*, 309 S.C. 263, 422 S.E.2d 103 (1992)). Advertising a jackpot over the statutory $125 limit is offensive and has a tendency to deceive a person into thinking that a jackpot over $125 is legal.[16] Thus, we hold that advertising a "jackpot" could be a

---

**16.** We easily reject respondents' argument that there are no restrictions on "winning jackpots" or an amount of credits worth more than $125. Respondents contend there is only a limitation that prohibits an operator from redeeming more that $125 worth of free game credits. Accepting respondents' argument would render the advertising "unfair" because as stated above an act is unfair under the UTPA when it has a

violation of the UTPA and dismissal of this cause of action is not appropriate at this stage of the proceedings.

On appeal, respondents also contend the $125 limit does not prohibit successive cash payouts over several days and/or the subtracting the amount of money placed into the machine by the player prior to the operator paying the $125 limit. We disagree. The circuit court did not interpret § 12–21–2791 in his order. The circuit court merely held that there is no limit on the amount of free game credits a player may earn during a 24–hour period and § 12–21–2791 limits the amount of cash payouts for free game credits earned to $125 in any 24–hour period. However, we take this opportunity to hold that § 12–21–2791 states exactly what it means.

The statute is not ambiguous. "[W]hen the terms of a statute are clear and not ambiguous, there is no room for construction and the Courts are required to apply such according to their literal meaning." *McMillen Feed Mills, Inc. v. Mayer*, 265 S.C. 500, 220 S.E.2d 221 (1975). Allowing video operators to pay out a larger jackpot over several days would render the statute meaningless. It would nullify the limit. Further, to subtract how much the player has deposited into the machine would likewise render the statute meaningless.[17] Statutes should not be construed so as to lead to an absurd result. *Carolina Power & Light v. Town of Pageland*, 321 S.C. 538, 471 S.E.2d 137 (1996). We will reject a meaning when to accept it would lead to a result so plainly absurd that it could not have been intended by the Legislature or would defeat the plain legislative intention. *Kiriakides v. United Artists Communications, Inc.*, 312 S.C. 271, 440 S.E.2d 364 (1994). Thus, we hold the $125 limit is a $125 per 24–hour period limit.[18] Successive cash payouts over several days or

tendency to deceive. Surely, the average person playing video poker that advertises the winning of a jackpot would assume that the operator would pay the advertised jackpot amount if won.

17. We note that the video poker industry as a whole has not been subtracting a player's deposits into the machine from his total winnings when paying out. Thus, the procedures followed by the industry in paying out winnings do not even comply with or support this interpretation of the $125 payout limit.

18. The United States District Court held similarly in *Johnson v. Collins*, C.A. No. 3:97–2136–17 (D.S.C. filed September 15, 1998, and April 28,

14

subtracting the money a player has deposited into the machine is not authorized under this statute and would render the $125 limit meaningless.[19]

In conclusion, on the basis of the complaint it cannot be stated appellants are not entitled to any relief whatsoever. Accordingly, we reverse the circuit court's ruling that the RICO cause of action must be pled with particularity, §§ 12–21–2804(A) and (B) cannot serve as predicate acts under RICO, the UTPA cause of action was not sufficiently pled, and the conduct alleged in violation of the UTPA is authorized by law or is exempted. We affirm the circuit court's ruling that § 12–21–2791 cannot serve as a predicate act.

**AFFIRMED IN PART AND REVERSED IN PART.**

FINNEY, C.J., TOAL and BURNETT, JJ., and Acting Associate Justice GEORGE T. GREGORY, Jr., concur.

---

1999), that the $125 payout limit is $125 per 24–hour period and alleged violations of §§ 12–21–2804(A) and (B) can serve as predicate acts in a RICO cause of action. The order which granted permanent injunctive relief has been stayed by the Fourth Circuit Court of Appeals pending appeal of the injunction order on its merits. *Johnson v. Collins*, No. 98–2225(L) (CA–97–2136–3–17) (4th Cir. filed July 7, 1999). However, the District Court's ruling and analysis on the above issues are consistent with our opinion.

**19.** Again, we note that the General Assembly has recently passed legislation which increases the payout limit to $500 regardless of the amount of money deposited into the machine by the player. This part of the legislation takes effect December 1, 1999, if a majority of the voters decide in the November 2nd referendum that cash payouts on video game machines should continue.