743 S.E.2d 808

HEALTH PROMOTION SPECIALISTS, LLC, and
Palmetto Dental Care, LLC, Plaintiffs,

of which Health Promotion Specialists, LLC, is Appellant,

v.

SOUTH CAROLINA BOARD OF DENTISTRY, Respondent.

Appellate Case No. 2011–200626.

No. 27263.

Supreme Court of South Carolina.

Heard May 1, 2013.
Decided June 12, 2013.

Desa Allen Ballard and Stephanie Nichole Weissenstein of Ballard Watson Weissenstein, of West Columbia, for Appellant.

Andrew F. Lindemann, Kenneth P. Woodington, and William H. Davidson, II, of Davidson & Lindemann, PA, of Columbia, for Respondent.

Justice BEATTY.

Health Promotion Specialists, L.L.C. (Health Promotion), a corporation employing dental hygienists that contract with supervising dentists, brought suit against the South Carolina Board of Dentistry (the Board)[1] based on the Board's enactment and enforcement of an emergency regulation addressing the authorization required for certain procedures performed by dental hygienists in school settings. Health Promotion appeals the circuit court's order granting summary judgment in favor of the Board. Health Promotion contends the circuit court erred in: (1) concluding the Board is immune from suit pursuant to the South Carolina Tort Claims Act (TCA)[2]; (2) finding Health Promotion could not sustain a cause of action for violation of the South Carolina Unfair Trade Practices Act

---

1. The Board is South Carolina's regulatory authority for dentists and dental hygienists and is composed of seven dentists, one dental hygienist, and one lay member. S.C.Code Ann. § 40–15–20 (2011). An amendment, with an effective date of June 7, 2012, revised the composition of the Board and the procedures for appointment of its members. S.C.Code Ann. § 40–15–20 (Supp.2012).

2. S.C.Code Ann. §§ 15–78–10 to –220 (2005 & Supp.2012).

(SCUTPA)[3] as the Board is not a "person" and its actions were not within "trade or commerce" for the purposes of the SCUTPA; and (3) denying Health Promotion's motion to amend its Complaint. This Court certified this appeal from the Court of Appeals pursuant to Rule 204(b), SCACR. We affirm as we find the Board proved as a matter of law that it is entitled to immunity from suit.

## I. Factual/Procedural History

In 1988, the General Assembly amended the Dental Practice Act (DPA)[4] to authorize, subject to certain restrictions, dental hygienists to provide various oral health services in public settings, including schools. Act No. 439, 1988 S.C. Acts 2921. Section 40–15–80 of this legislation authorized dental hygienists to apply topical fluoride and perform oral screenings in a school setting "without the presence of a dentist on the premises." S.C.Code Ann. § 40–15–80(B) (2001). The 1988 law permitted dental hygienists to apply sealants and oral prophylaxis in a school setting, but only if the following conditions were met: (1) the student had written permission from a parent or guardian; (2) a licensed dentist authorized the treatments; (3) the student was not an active patient of another dentist; and (4) the authorizing dentist had examined the student's teeth and given written authorization within 45 days before application of the sealant or oral prophylaxis. *Id.* § 40–15–80(C).

In 2000, the General Assembly amended the DPA to impose fewer restrictions on dental hygienists to perform preventive dental services in schools. Act No. 298, 2000 S.C. Acts 2088. As amended, the DPA authorized dental hygienists to perform oral prophylaxis and to apply sealants and topical fluoride in schools under a dentist's "general supervision," which was defined to mean that a licensed dentist or a state public health dentist "authorized the procedures to be performed but does not require that a dentist be present when the procedures are performed." S.C.Code Ann. §§ 40–15–80(B), –85(B) (2001 & Supp.2002).[5] Thus, other than the parental-

---

3. S.C.Code Ann. §§ 39–5–10 to –560 (1985 & Supp.2012).

4. S.C.Code Ann. §§ 40–15–10 to –380 (2011 & Supp.2012).

5. Based on the 2000 amendments, section 40–15–80 provided in pertinent part:

consent requirement, the 2000 amendments did not preserve the requirements set forth in the prior version of section 40–15–80(C)(3), specifically the 45–day dentist pre-examination requirement.

In signing the 2000 amendments, Governor Jim Hodges issued a statement that the "new law removes a regulation that hindered access to dental care" and noted that it would "allow[ ] dental hygienists to offer preventative dental care in places such as schools ... [where] [d]entists rarely practice full-time."

In January 2001, Health Promotion began providing cleanings, sealants, topical fluoride treatments, and other preventive dental hygiene services onsite to children in South Carolina schools. As a result, Health Promotion established working relationships with twenty-one school districts in South Carolina. According to its records, Health Promotion had screened over 19,000 children and had provided services to over 4,000, of whom almost 3,000 were Medicaid-eligible.

On July 13, 2001, the Board promulgated Emergency Regulation 39–18, to "clarify" the authorization required for dental hygienists to administer care in school settings. The Emergency Regulation stated in relevant part:

(A) A clinical examination must be conducted by the supervising dentist for each patient not more than forty-five (45) days prior to the date the dental hygienist is to perform the procedure for the patient.

Emergency Regulation 39–18, State Register, Vol. 25, Issue No. 7 (July 27, 2001). Upon approval of the Board, the Emergency Regulation was put into effect and was to expire in January 2002, 180 days after it was promulgated.[6]

---

(B) In school settings, licensed dental hygienists may apply topical fluoride and may perform the application of sealants and oral prophylaxis under general supervision, with written permission of the student's parent or guardian.
S.C.Code Ann. § 40–15–80(B) (Supp.2002).

**6.** Because the General Assembly was out of session when the regulation was filed and when the normal 90–day period expired, the regulation was extended for an additional 90 days. *See* S.C.Code Ann. § 1–23–130(C) (2005) ("If emergency regulations are either filed or expire

Immediately thereafter, Health Promotion sought a temporary restraining order to prohibit the Board from enforcing the Emergency Regulation.[7] Additionally, Health Promotion sought damages as it contended the enactment of the Emergency Regulation would effectively force it out of business.

By order dated August 21, 2001, Special Circuit Court Judge Joseph M. Strickland denied the motion on the grounds that: (1) Health Promotion failed to exhaust its administrative remedies; and (2) the Board acted within "its power and authority as conferred by statute" to promulgate the Emergency Regulation, which reasonably clarified the term "general supervision" in the 2000 amendment to include a pre-examination by a licensed dentist. Judge Strickland further determined that Health Promotion failed to establish any irreparable harm for which there was not an adequate remedy at law as it had alleged "lost business from eleven school districts that would have resulted in revenue of five million ($5,000,000.00) dollars." On appeal, the Court of Appeals affirmed the decision solely on the ground that Health Promotion failed to exhaust its administrative remedies. *Health Promotion Specialists, L.L.C. v. S.C. Bd. of Dentistry,* Op. No. 2003–UP–232 (S.C. Ct.App. filed Mar. 26, 2003).

On August 24, 2001, the Board published a proposed permanent regulation that was essentially identical to the Emergency Regulation. As required by statute,[8] an Administrative Law Judge held a public hearing to determine the "need and reasonableness" of the proposed regulation.

On February 11, 2002, Administrative Law Judge Marvin Kittrell issued a report wherein he concluded that "the proposed regulation, as written, is unreasonable to the extent that it reinstates a requirement the legislature purposely eliminated when enacting 2000 S.C. Acts 298." In so ruling, Judge

while the General Assembly is in session, the emergency regulations remain in effect for ninety days only and may not be refiled; but if emergency regulations are both filed and expire during a time when the General Assembly is not in session they may be refiled for an additional ninety days.").

7. In its Complaint, Health Promotion named the following as defendants: the Board, the South Carolina Dental Association, Dr. Charles Maxwell, Dr. Charles E. Millwood, and James H. Zorn, Jr.

8. S.C.Code Ann. §§ 1–23–110, –111 (2005 & Supp.2012) (outlining administrative procedures for publication of proposed promulgations).

Kittrell effectively found the proposed regulation contravened the legislature's intent, in amending section 40–15–80 in 2000, "to provide for quicker and more accessible dental care to be given to these low-income children and adults." Ultimately, the Board elected not to submit the proposed permanent regulation to the General Assembly.

In June 2003, the General Assembly again amended the DPA to clarify the permissibility of certain acts by dental hygienists in public health school settings. Act No. 45, 2003 S.C. Acts 210–15. As amended, dental hygienists were authorized to provide preventive dental care in certain public health settings without a requirement for pre-examination by a dentist. S.C.Code Ann. § 40–15–102(D), –110(A)(10) (2011).

On September 12, 2003, the Federal Trade Commission (FTC) instituted an administrative complaint against the Board alleging the Board violated Section 5 of the Federal Trade Commission Act by "restrain[ing] competition in the provision of preventive dental care services by unreasonably restricting the delivery of dental cleanings, sealants, and topical fluoride treatments in school settings by licensed dental hygienists."

After protracted adjudicative and appellate proceedings, the FTC issued a Consent Agreement on September 6, 2007. The Consent Agreement mandated that the Board submit written notice to the FTC thirty days prior to any action of the Board "relating to the provision by dental hygienists of preventive dental services in a public setting." The Consent Agreement was for "settlement purposes only" and did not constitute an admission by the Board as to the law or facts alleged in the FTC Complaint.

During the pendency of the adjudication of the FTC complaint, Health Promotion filed a case in federal court essentially based on the same facts as the state court action.[9] By agreement of the parties, the state court action was stayed pending the outcome of the federal court case. Ultimately, the Board was dismissed from the federal case and the remaining parties reached a settlement. On November 1, 2007, the state court case was restored to the Richland County

9. *Health Promotion Specialists, Inc., a S.C. Corporation v. S.C. Dental Association, et al.,* Civil Action No. 3:03–3230–24 (D.S.C.2003).

circuit court docket with Health Promotion and the Board as the remaining parties.

Subsequently, Health Promotion moved to amend its Complaint to include a claim alleging the Board conspired to violate the SCUTPA. The Board renewed its previously filed motion to dismiss and filed a motion for summary judgment. In its motion, the Board maintained it was entitled to summary judgment primarily based on the following grounds: (1) it was immune from suit pursuant to the TCA as well as common law legislative and quasi-legislative immunity; (2) Health Promotion could not maintain a cause of action under the SCUTPA; and (3) Health Promotion's claim for injunctive relief was moot.

After a hearing, Circuit Court Judge William P. Keesley issued an order granting summary judgment in favor of the Board. In so ruling, Judge Keesley found: (1) Health Promotion could not maintain a cause of action for violation of the SCUTPA because the Board is not a "person" and did not engage "in the conduct of any trade or commerce" for the purposes of the SCUTPA; (2) the Board was immune from suit under the TCA and common law legislative immunity; (3) the claim for injunctive relief was moot; and (4) Health Promotion was not entitled to amend its Complaint. Additionally, Judge Keesley found it unnecessary to address the Board's remaining defenses, which included other claims of statutory and common law immunity.

Following the denial of its motion for reconsideration, Health Promotion appealed to the Court of Appeals. This Court certified this appeal from the Court of Appeals pursuant to Rule 204(b), SCACR.

## II. Discussion

### A. Procedural Issues

#### 1. Amendment of the Complaint

■ With limited discussion, Health Promotion contends the circuit court judge erred in denying its motion to amend the Complaint. In support of this contention, Health Promotion maintains "it could establish facts that would prove the Board could be a co-conspirator in a conspiracy to violate the

SCUTPA and that the Board may also be found to have aided and abetted others in violations of SCUTPA." Because the parties have yet to engage in discovery, Health Promotion asserts the amendment was permissible under Rule 15 of South Carolina Rules of Civil Procedure.

Rule 15, SCRCP, provides that: "A party may amend his pleading once as a matter of course at any time before or within 30 days after a responsive pleading is served or, if the pleading is one to which no responsive pleading is required and the action has not been placed upon the trial roster, he may so amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires and does not prejudice any other party." Rule 15(a), SCRCP. A motion to amend is within the sound discretion of the trial judge and the opposing party has the burden of establishing prejudice. *Foggie v. CSX Transp., Inc.*, 315 S.C. 17, 431 S.E.2d 587 (1993).

In denying the motion, Judge Keesley noted the case was filed in 2001 and that the Complaint was initially amended in 2004. Recognizing that extensive discovery had been conducted in the federal case involving the same parties, Judge Keesley deemed the motion untimely and declined to permit Health Promotion to supplement its case with additional theories. Additionally, he found the amendment would unduly prejudice the Board as it would be forced to defend against "arguably new theories of the case when so much time ha[d] elapsed." Even if the motion had been timely, Judge Keesley found the amendments involving civil conspiracy would be "futile" as the Board would be immune from suit for claims involving the commission of intentional torts under the TCA.

We find Judge Keesley did not abuse his discretion as Health Promotion's delay in moving to amend the Complaint was inexplicable given the seven-year lapse between the filing of the initial complaint and the oral motion. Moreover, despite the extensive federal court proceedings, there were no significant factual developments that warranted the untimely amendment. Furthermore, even if the amendment had been permitted, it would not have affected the grant of summary judgment to the Board. As will be discussed, we find the

Board was immune from any tort claim asserted by Health Promotion.[10]

## 2. Summary Judgment Posture

Although not designated as a separate issue, Health Promotion appears to challenge Judge Keesley's ruling as an improper dismissal pursuant to Rule 12(b)(6).[11] Alternatively, Health Promotion generally claims summary judgment was improperly granted as there are questions of material fact that should have been decided by a jury.

We find this challenge to be without merit as the Board designated its motion as one for summary judgment, Health Promotion responded in full to the motion, and Judge Keesley's decision was based on and encompassed more than the parties' pleadings. *See* Rule 12(b), SCRCP ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state facts sufficient to constitute a cause of action, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); *Charleston County Sch. Dist. v. Harrell*, 393 S.C. 552, 559 n. 4, 713 S.E.2d 604, 608 n. 4 (2011) (recognizing that a motion to

10. We also note that in order for Health Promotion to maintain a cause of action for conspiracy it would have needed to include the defendants named in the original lawsuit or establish that members of the Board acted with "actual malice." *See Pye v. Estate of Fox*, 369 S.C. 555, 567–68, 633 S.E.2d 505, 511 (2006) ("The gravamen of the tort of civil conspiracy is the damage resulting to the plaintiff from an overt act done pursuant to the combination, not the agreement or combination per se."); *LaMotte v. Punch Line of Columbia, Inc.*, 296 S.C. 66, 69, 370 S.E.2d 711, 713 (1988) ("A civil conspiracy is a combination of two or more persons joining for the purpose of injuring the plaintiff and causing special damage to the plaintiff."); *see also* S.C.Code Ann. § 40–15–60 (2011) ("No member of the board, or its director, its committees, special examiners, agents, and employees shall be held liable for acts performed in the course of official duties except where actual malice is shown."). The Board, however, is now the sole defendant.

11. *See Stiles v. Onorato*, 318 S.C. 297, 300, 457 S.E.2d 601, 602 (1995) (recognizing that in deciding a motion to dismiss pursuant to Rule 12(b)(6), SCRCP, the trial judge should consider only the allegations set forth on the face of the plaintiff's complaint).

dismiss may be converted into a motion for summary judgment when the court considers matters outside of the pleadings). Furthermore, other than characterizing Judge Keesley's ruling as premature, we discern no objection by Health Promotion regarding the posture of the case.

Thus, we have analyzed this case utilizing our summary judgment standard of review. As will be discussed, we find Judge Keesley correctly granted summary judgment because the facts are undisputed and the Board established its entitlement to immunity as a matter of law.

■ Because this case was presented to the circuit court in the posture of a motion for summary judgment, it is governed by Rule 56(c) of the South Carolina Rules of Civil Procedure. This rule provides a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP." *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).

## B. Substantive Issues

### 1. Immunity from Suit

Health Promotion asserts the circuit court judge erred in finding as a matter of law that the Board's actions are "protected by the shields of legislative and common law immunities." Because immunity under the TCA is an affirmative defense, Health Promotion contends the Board failed to prove as a matter of law that it was entitled to this immunity. Specifically, Health Promotion asserts the Board did not prove it was entitled to discretionary immunity as there is no evidence that it "weighed competing considerations and then made a conscious choice to act."

Health Promotion's reliance on an alleged failure to prove entitlement to discretionary immunity is misplaced. Rather, at issue is the propriety of the Board's legislative action. As

will be discussed, we find that subsections (1), (2) and (4) of section 15–78–60 grant a per se immunity to legislative actions. Thus, there is an irrefutable presumption of the exercise of discretion.

The TCA "is the exclusive civil remedy available for any tort committed by a government entity, its employees, or its agents except as provided in § 15–78–70(b)." *Wells v. City of Lynchburg,* 331 S.C. 296, 302, 501 S.E.2d 746, 749 (Ct.App. 1998); *see* S.C.Code Ann. § 15–78–200 (2005) ("Notwithstanding any provision of law, this chapter, the 'South Carolina Tort Claims Act', is the exclusive and sole remedy for any tort committed by an employee of a governmental entity while acting within the scope of the employee's official duty.").

The TCA provides that "[t]he State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages contained herein." S.C.Code Ann. § 15–78–40 (2005). "Governmental entity" is defined by the TCA as "the State and its political subdivisions." *Id.* § 15–78–30(d).

"The Tort Claims Act expressly preserves all existing common law immunities." *O'Laughlin v. Windham,* 330 S.C. 379, 383, 498 S.E.2d 689, 691 (Ct.App.1998) (quoting section 15–78–20(b), which provides: "The General Assembly additionally intends to provide for liability on the part of the State, its political subdivisions, and employees, while acting within the scope of official duty, only to the extent provided herein. All other immunities applicable to a governmental entity, its employees, and agents are expressly preserved.").

■■ "The burden of establishing a limitation upon liability or an exception to the waiver of immunity under the Tort Claims Act is upon the governmental entity asserting it as an affirmative defense." *Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 393, 520 S.E.2d 142, 152 (1999). "Provisions establishing limitations upon and exemptions from liability of a governmental entity must be liberally construed in favor of limiting liability." *Id.*

■ We conclude the Board constitutes a governmental entity that may invoke the protections of the TCA. In reaching this conclusion, we have considered the following factors: "whether the entity functions statewide, whether the entity performs the work of the state, whether the entity was created by the legislature, and whether the entity is subject to local control." 81A C.J.S. *States* § 552 (Supp. 2013) (footnote omitted). Additionally, we have examined "the character of the power delegated to the entity, and the nature of the function performed by the entity." *Id.*

Significantly, the Board was created by the General Assembly as the statewide regulatory authority for dentists and dental hygienists. S.C.Code Ann. § 40–15–10 (2011); *see id.* § 40–1–20(3) (defining "Board" to mean "the group of individuals charged by law with the responsibility of licensing or otherwise regulating an occupation or profession within the State"). Several members of the Board are appointed by the Governor and its funds are controlled by the State Treasurer. S.C.Code Ann. § 40–15–20 (providing for Governor's appointment of Board members); *id.* § 40–15–50 ("All fees received by the board become the property of the state general fund and must be deposited to the account of the State Treasurer. The expenditures of the board must be from state appropriations. All fines must be deposited into a special account to be held by the State Treasurer for the purpose of the payment of administrative costs upon the approval of the Budget and Control Board.").

Notably, the individual members of the Board are entitled to immunity for actions performed in the course of their official duties. *See* S.C.Code Ann. § 40–15–60 (2011) ("No member of the board, or its director, its committees, special examiners, agents, and employees shall be held liable for acts performed in the course of official duties except where actual malice is shown."). Thus, by creating this governmental entity, the General Assembly intended for the Board as a whole to come within the purview of the TCA. Accordingly, as a governmental entity, the Board is entitled to assert the affirmative defense of immunity under the provisions of the TCA.

■ Having found the Board qualifies for the protections of the TCA, the question becomes whether the Board satisfied its

burden of establishing a limitation on liability or an exception to the waiver of immunity. We conclude the Board established as a matter of law that it was entitled to immunity for any tort claims arising out of the promulgation of the Emergency Regulation.

Judge Keesley properly found the Board's promulgation of the Emergency Regulation constituted a legislative or quasi-legislative act that was protected from liability under the following provisions of the TCA, which provide that the governmental entity is not liable for a loss resulting from:

(1) legislative, judicial, or quasi-judicial action or inaction;

(2) administrative action or inaction of a legislative, judicial, or quasi-judicial nature;

. . . .

(4) adoption, enforcement, or compliance with any law or failure to adopt or enforce any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies.

S.C.Code Ann. § 15–78–60(1), (2), (4) (2005).

Furthermore, the Board's entitlement to immunity is supported by common law that interprets and applies principles of legislative immunity, a doctrine that has not been supplanted by the TCA. *See Richardson v. McGill,* 273 S.C. 142, 146, 255 S.E.2d 341, 343 (1979) ("A sound public policy has long recognized an absolute immunity of members of legislative bodies for acts in the performance of their duties."); *see also Williams v. Condon,* 347 S.C. 227, 553 S.E.2d 496 (Ct.App. 2001) (discussing principles of legislative immunity as established by the United States Supreme Court in *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)).

Based on the foregoing, we hold the Board was immune from the tort claims asserted by Health Promotion. Although this decision is dispositive, we briefly address Health Promotion's remaining issues regarding its claim under the SCUTPA.

### 2. SCUTPA Claim

Health Promotion argues the circuit court judge erred in finding that Health Promotion could not sustain a cause of

action for violation of the SCUTPA as the Board is not a "person" and its actions were not within "trade or commerce" for the purposes of the SCUTPA.

The SCUTPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices *in the conduct of any trade or commerce* are hereby declared unlawful." S.C.Code Ann. § 39–5–20(a) (1985) (emphasis added). Although the SCUTPA provides for enforcement by the Attorney General,[12] it also provides for an action by a private party "who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by *another person* of an unfair or deceptive method, act or practice declared unlawful by § 39–5–20 may bring an action individually, but not in a representative capacity, to recover actual damages." *Id.* § 39–5–140(a) (emphasis added); F. Patrick Hubbard & Robert L. Felix, *The South Carolina Law of Torts* 415–16 (4th ed.2011) (discussing provisions of the SCUTPA and quoting section 39–5–140 of the South Carolina Code).

 "To recover in an action under the UTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Wright v. Craft,* 372 S.C. 1, 23, 640 S.E.2d 486, 498 (Ct.App.2006). "An act is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive." *Gentry v. Yonce,* 337 S.C. 1, 12, 522 S.E.2d 137, 143 (1999). "An act is 'deceptive' when it has a tendency to deceive." *Id.*

Even assuming arguendo that the Board constitutes a "person" susceptible to suit under the SCUPTA, we find Health Promotion's claim fails as the Board's action of promulgating the Emergency Regulation cannot satisfy the requirement that the alleged unfair act occurred "in the conduct of any trade or commerce."

As defined by the SCUTPA, "trade or commerce" includes "the advertising, offering for sale, sale or distribution of any

---

12. S.C.Code Ann. § 39–5–50 to –130 (1985) (authorizing and identifying specific powers of the Attorney General in carrying out the duties prescribed in the SCUTPA).

services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State." S.C.Code Ann. § 39–5–10(b) (1985). By these plain terms, it is clear the General Assembly intended for the SCUTPA to apply to business or consumer transactions.

Furthermore, by its very definition, "trade or commerce" involves "[e]very business occupation carried on for subsistence or profit and involving the elements of bargain and sale, barter, exchange, or traffic." *Black's Law Dictionary* (9th ed.2009); *see Bretton v. State Lottery Comm'n*, 41 Mass.App. Ct. 736, 673 N.E.2d 76, 78–79 (1996) (recognizing that "the proscription in § 2 of 'unfair or deceptive acts or practices in the conduct of any trade or commerce' must be read to apply to those acts or practices which are perpetrated in a business context" (citations omitted)).

In the instant case, the Board's sole action was the promulgation of a regulation. We find this act, which is alleged to have been unfair, does not fall within the definition of "trade or commerce" as it did not involve advertisement, sale, or distribution of services or property within a business context.[13]

### III. Conclusion

Based on the foregoing, we find Judge Keesley properly denied Health Promotion's motion to amend its Complaint. Furthermore, we conclude that he correctly granted summary judgment in favor of the Board as the facts of this case are

---

**13.** Although the SCUTPA has been interpreted to include claims regarding professional services, these cases are inapplicable as the instant appeal involves a regulation of professional services and not the "sale" of those services. *See Taylor v. Medenica*, 324 S.C. 200, 217, 479 S.E.2d 35, 44 (1996) (citing the statutory definitions of section 39–5–10(b) and holding "[t]he provision of *any* service constitutes commerce within the meaning of the UTPA"; the Court observed that "[t]he statute does not exclude professional services from its definition"). Furthermore, although not dispositive, the Board's actions arguably fell within the regulatory exemption of the SCUTPA, which provides that the SCUTPA does not apply to "[a]ctions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State or the United States or actions or transactions permitted by any other South Carolina State law." S.C.Code Ann. § 39–5–40(a) (1985).

undisputed and the Board established its entitlement to immunity as a matter of law. Specifically, the Board's action in promulgating the Emergency Regulation was exempt under the provisions of the TCA involving legislative or quasi-legislative decisions. Alternatively, even if the Board was not immune, Health Promotion could not sustain a cause of action for a violation of the SCUTPA as the Board's promulgation of the Emergency Regulation was not an action "in the conduct of any trade or commerce." Accordingly, we affirm the order of the circuit court.

**AFFIRMED.**

TOAL, C.J., KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in result only.