Chief Justice TOAL.
I concur in part and respectfully dissent in part. I concur with the majority in affirming the court of appeals’ decision allowing Proctor to pursue her UTPA claim for gambling losses she sustained between 1999 and July 1, 2000 — a period of time in which video poker was legal in South Carolina. I further concur with the majority’s finding that the doctrine of in pari delicto does not prevent recovery in this situation. Indeed, the operators of video poker machines should “be held to a greater knowledge and understanding of the laws than their customers,” and while those who play the machines are not without fault, “the fault or culpability is certainly not ‘equal.’ ” Johnson v. Collins Entm’t Co., 349 S.C. 613, 639 n. 13, 564 S.E.2d 653, 667 n. 13 (2002). Nevertheless, I write to emphasize that the General Assembly has not altogether abolished the doctrine of in pari delictio, but instead, has *335 indicated an intention to depart from the doctrine with respect to illegal gambling losses.[16]
Unlike the majority, however, I would hold that Proctor may pursue her UTPA claim for losses sustained after July 1, 2000, because I find the majority’s decision prohibiting Proctor’s UTPA claim for losses sustained while video poker was illegal to be a departure from our precedent, as well as South Carolina’s anti-gambling public policy. Therefore, I dissent from the majority’s reversal of the court of appeals’ decision upholding the circuit court’s order granting Proctor’s motion for summary judgment on her UTPA claim.
As the majority acknowledges, this Court’s opinions in Johnson and Gentry v. Yonce, 337 S.C. 1, 522 S.E.2d 137 (1999), at the least, do not prohibit — and at the most, authorize — a gambler or third party’s UTPA claim to recover for illegal gambling losses. See Johnson, 349 S.C. at 635, 564 S.E.2d at 665; Gentry, 337 S.C. at 14, 522 S.E.2d at 144. I disagree with the majority’s decision to partially overrule those cases for two reasons. First, the General Assembly has not responded to Johnson and Gentry to indicate its intention that sections 32-1-10 and 32-1-20 of the South Carolina Code provide the exclusive remedy for losses sustained by illegal gambling. Moreover, unlike the majority, I do not find the damages recoverable under those statutes indicative of the General Assembly’s intent on this matter. Rather, in my view, without evidence to the contrary, recovery under the UTPA is “cumulative and supplementary” to recovery under sections 32-1-10 and 32-1-20, and the recovery provided by those statutes has no bearing on the possible UTPA claim. See S.C.Code Ann. § 39-5-160 (1985) (“The powers and remedies provided by [the UTPA] shall be cumulative and supplementary to all powers and remedies otherwise provided by law.”).
*336 Second, in my view, it is contrary to our state’s public policy to disallow Proctor’s ability to recover all of her losses sustained from gambling under the UTPA. After the state’s legal prohibition against video gambling dissolved in 1986, the video gambling industry in South Carolina quickly built an expansive and hugely profitable operation. See R. Randall Bridwell & Frank L. Quinn, From Mad Joy to Misfortune: The Merger of Law & Polities in the World of Gambling, 72 Miss. L.J. 565, 573-80 (2002) (providing a definitive history of video gambling in South Carolina). However, due to the extensive social costs caused by this “unexpected and unintended gambling business,” it wasn’t long before the industry began to come undone. Id. at 580. This Court’s aversion to video gambling — and more importantly, its serious repercussions to gamblers and their families — was first evidenced in Berkebile v. Outen, 311 S.C. 50, 426 S.E.2d 760 (1993), in which the Court permitted a gambler to bring an action to recover losses from playing video poker under an old state statute (the state version of the Statute of Anne). This Court found more compelling the gambler’s argument that “the statute has the effect of protecting a gambler, regardless of the legality of the game, from abusing the vice and exceeding limits which bring harm to the gambler and his or her family.” Id. at 54, 426 S.E.2d at 762-63. The Court further noted the General Assembly’s intention to “adopt[ ] a policy to protect a citizen and his family from the gambler’s uncontrollable impulses.” Id. at 55, 426 S.E.2d at 763. When this Court answered certified questions in Johnson in 2002, it reiterated the goal of limiting excessive gambling and protecting gamblers and then-families from allowing the gambler’s vice to overcome his ability to pay. 349 S.C. at 635, 564 S.E.2d at 664-65 (citation omitted).[17]
For these reasons, I would allow Proctor to pursue her UTPA claim in full against Defendants, who engaged in deliberate conduct that fed Proctor’s gambling addiction. Accordingly, I would affirm in full the court of appeals’ decision *337 affirming the circuit court’s order granting Proctor’s motion for summary judgment on the issue of liability.

. The majority states that allowing a gambler to recover under UTPA for losses sustained by illegal gambling could lead to "anyone engaged in an illegal activity [being able to] allege an UTPA claim to recover losses sustained by the illegal activity.” However, because the General Assembly has only abolished the in pari delictio doctrine in very limited circumstances, it is my opinion that the majority's statement presents an inconceivable result, especially given this Court’s consciousness of public policy concerns.

. In my view, Proctor is not a sympathetic figure, and similar to the majority, I do not wish to grant her a windfall. If Proctor recovers under UTPA for all of her gambling losses, however, it would appear that her recovery would be used to satisfy her outstanding Confession of Judgment in favor of Trans-Union.